FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AE, a minor, by and through his
Guardian ad Litem, Maribel
Hernandez,

*Plaintiff-Appellant,*

v.

COUNTY OF TULARE,

*Defendant-Appellee,*

CELESTE ABARCA,

*Defendant-Appellee,*

PATRICIA NEGRETTE,

*Defendant-Appellee,*

PRUDENCE MORRIS,

*Defendant-Appellee,*

SOTO, Doctor; MARIE FOCHA;
MIRIAM SALLAM,

*Defendants-Appellees,*

and

TIFFANY BREEN,

*Defendant,*

FAMILY BUILDERS FOSTER CARE,
INC.; CWA FELIX; ADRIAN
MARQUEZ,
                    *Defendants,*

YADIRA PORTILLO,
                    *Defendant,*

LETICIA QUEZADA; HELEN RUE,
                    *Defendants,*

TULARE COUNTY CHILD WELFARE
SERVICES; TULARE COUNTY
HEALTH AND HUMAN SERVICES
AGENCY; TULARE YOUTH SERVICE
BUREAU, INC.; COURTNEY WAMPLER;
HEIDI WLLLIAMS,
                    *Defendants.*

No. 10-16116

D.C. No.
1:09-cv-02204-LJO-
DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
April 13, 2011—San Francisco, California

Filed January 27, 2012

Before: Sidney R. Thomas and Johnnie B. Rawlinson,
Circuit Judges, and Cormac J. Carney, District Judge.*

Opinion by Judge Rawlinson

---

*The Honorable Cormac J. Carney, District Judge for the U.S. District
Court for Central California, Santa Ana, sitting by designation.

**COUNSEL**

Charles R. Chapman, Esq., Rodriguez & Associates, Bakersfield, California, for the plaintiff-appellant.

Kathleen Bales-Lange, County Counsel, and Judy Chapman, Deputy County Counsel (argued), Visalia, California, for the defendants-appellees.

**OPINION**

RAWLINSON, Circuit Judge:

Plaintiff-Appellant AE, a minor, was sexually assaulted by his seventeen-year-old foster brother (Foster Brother) while

living in a foster family home in Tulare County, California. AE contends that the County of Tulare (County) and its employee social workers (collectively, Defendants), failed to intervene prior to his sexual assault, despite their knowledge of the escalating threats and violence against him. AE brought a federal civil rights claim pursuant to 42 U.S.C. § 1983 and state negligence claims against Defendants. AE appeals the district court's dismissal with prejudice of all claims against the County. We conclude that the district court abused its discretion in dismissing AE's § 1983 and derivative liability claims without leave to amend. Accordingly, we reverse the district court's decision and vacate the judgment.

## I.  BACKGROUND

### A.  Factual Allegations of the First Amended Complaint

The First Amended Complaint tells a tragic story of escalating threats and violence against AE, a nine-year-old boy, at the hands of his Foster Brother. In September, 2008, AE was removed from his mother's custody,[1] transferred to a foster family agency, and ultimately placed with foster care parents. According to the First Amended Complaint, Defendants knew or should have known that the Foster Brother, who was on probation, a dependent of the court, and on the caseload of a County social worker,[2] "was dangerous and posed a threat to [AE] and/or minors such as [AE]."

On November 5, 2008, a "reporting party" informed Yadira Portillo (Portillo) and Courtney Wampler (Wampler), both County social workers, that the Foster Brother hit AE in the chest and left "a 3½ by 5 inch bruise on his left shoulder." That same date, AE informed "CWA Felix" (Felix), also a

---

[1] AE's mother, Maribel Hernandez, was appointed as his Guardian ad Litem for this case.

[2] This social worker, Heidi Williams, was named as a defendant, but service subsequently was found to be defective.

County social worker, that two weeks earlier his Foster Brother had "socked him in the face and threatened him" after AE had witnessed the Foster Brother stealing money from their foster parent. Portillo and Wampler photographed AE's bruise. Around the same time, a foster parent informed Portillo and Wampler that the Foster Brother was on probation and was a dependent of the court. Further, the foster parent reported that on November 4, 2008, the Foster Brother had cursed at her for wiggling the bathroom door knob because he believed she was AE.

On November 20, 2008, AE's mother expressed concerns to Felix regarding AE's foster home placement. AE's mother requested that Felix have AE moved to a different foster home.

On November 25, 2008, Dr. Soto called Prudence Morris, the "Team Leader" for AE's foster care, to report that AE had told him during a recent evaluation that the Foster Brother regularly entered the bathroom while AE was showering, using the toilet, or brushing his teeth, to tell AE to "hurry up, and curse [him]." AE also informed Portillo and Wampler directly that his Foster Brother "would unlock the bathroom door using his nail and threaten[ ] to 'kick [AE's] ass." AE told Portillo and Wampler that his foster parent knew of the Foster Brother's behavior, but had responded only by ordering AE to use the downstairs bathroom.

On November 26, 2008, Portillo spoke with AE's therapist, Adrian Marquez, regarding what she had learned of AE's placement. Marquez responded that "there was a need to place more responsibility on the foster mother in supervising the actions of the children in the home . . . [and] that he did not believe [AE] had been making allegations to seek attention, but was instead minimizing the behavior of [his Foster Brother]."

On December 10, 2008, AE's foster parents reported to Portillo that AE had told them, approximately five days ear-

lier, on December 5 or 6, that the Foster Brother "went into [AE's] bedroom and attempted to get into his bed and pull his pants down."

On December 12, 2008, Portillo received two telephone calls regarding AE. A man describing himself as AE's uncle called to ask "what the agency was doing with his nephew." A County deputy sheriff also called to report that a man purporting to be AE's uncle had informed the police that "the agency was covering up an incident that occurred with his nephew and he wanted the Sheriff to pick up [AE] from foster care."

That same day, Portillo contacted AE's mother, who told Portillo that she had requested that Felix remove AE from his current placement. Subsequently, Portillo and another social worker, joined by a County police officer, interviewed AE. AE told the police officer "that he had been sodomized and forced to do oral copulation by [his Foster Brother]."

"On or about December 12 and/or 15, 2008," Portillo informed AE's mother that AE "had been assaulted, battered, sexually abused, sodomized and orally copulated by another dependent at the foster home . . ."

On approximately December 15, 2008, Portillo, a deputy district attorney, a County police detective, and a forensic interview specialist interviewed AE. AE described the sexual assault in detail. Following this interview, Portillo met immediately with her supervisor to reassess AE's foster placement, and AE was moved to a different foster home.

AE alleged that at all relevant times, Portillo, Wampler, and Felix were County employees acting within the course and scope of their employment. AE further alleged that all Defendants performed their acts and omissions "under the ordinances, regulations, customs, and practices of Defendant COUNTY OF TULARE . . ."

### B.  Procedural Background

The First Amended Complaint alleged two causes of action relevant to this appeal, a claim under 42 U.S.C. § 1983 for deliberate indifference, and claims for negligence pursuant to California statutes.[3]

Defendants moved to dismiss pursuant to FRCP 12(b)(6). The district court granted AE leave to amend the claims against Portillo, Wampler, and Felix. The district court dismissed with prejudice all claims against the County and entered judgment in its favor pursuant to FRCP 54(b). AE filed a timely appeal.

## II.  STANDARD OF REVIEW

We review *de novo* the district court's dismissal of a complaint for failure to state a claim. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). In conducting this review, we accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *See New Mexico State Invest. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).

We review for abuse of discretion the district court's denial of leave to amend. *See Telesaurus*, 623 F.3d at 1003. A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities. *See id.* A district court also abuses its discretion when it commits an error of law. *See Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1063 (9th Cir. 2005) ("An error of law is one form of an abuse of discretion.") (citation omitted).

---

[3]The First Amended Complaint also named Family Builders Foster Care, Inc., and the Tulare Youth Service Bureau, Incorporated, as defendants. Those entities were dismissed by the district court and are not before us on appeal.

## III.  DISCUSSION

### A.  Section 1983 Claim

**[1]** AE alleged claims against the County and individual County officials pursuant to 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment, which "protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010) (citations omitted).[4] AE argues that the district court erred in dismissing his § 1983 claim against the County. We agree with the district court that the First Amended Complaint failed to state a § 1983 claim against the County, but hold that the district court abused its discretion when it denied leave to amend.

**[2]** Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability. *See Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, plaintiffs must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." *Whitaker*, 486 F.3d at 581 (citation and internal quotation marks omitted).

**[3]** In the past, our cases have not required parties to provide much detail at the pleading stage regarding such a policy or custom. "In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy,

---

[4]No principled basis exists to distinguish harm inflicted by a foster sibling in a foster parent's home.

custom, or practice." *Id*. (citation, alteration, and internal quotation marks omitted).

AE contends that the First Amended Complaint met this minimalist standard, as it alleged that all Defendants performed all acts and omissions regarding AE's foster care placement and supervision "under the ordinances, regulations, customs, and practices of Defendant COUNTY OF TULARE . . ."

Citing *Monell* and *City of Canton v. Harris*, 489 U.S. 378 (1989), the First Amended Complaint also alleged that Defendants "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" that it elsewhere alleged. The First Amended Complaint did not put forth additional facts regarding the specific nature of this alleged "policy, custom or practice," other than to state that it related to "the custody, care and protection of dependent minors. . . ."[5]

Our circuit precedent, articulated first in *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986), and most recently in *Whitaker*, 486 F.3d at 581, requires plaintiffs in civil rights actions against local governments to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom. The County argues that our precedent has been implicitly overruled by the reasoning of intervening Supreme Court decisions, including *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009).

---

[5]Indeed, at several points the First Amended Complaint incorrectly refers to AE as the "Decedent" and alleges "policies, customs, and practices regarding the custody, care and protection of dependent minors . . . so inadequate that the failure to correct them would result in . . . the death of[ ] dependent minors, such as Plaintiff." These naked assertions make no sense in the context of this case.

**[4]** Yet briefing on this appeal was completed before our decision in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). There, we identified and addressed conflicts in the Supreme Court's recent jurisprudence on the pleading requirements applicable to civil actions. *See id.* at 1211-16 (addressing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam); and *Iqbal*. We held that:

> whatever the difference between [*Swierkiewicz, Dura Pharmaceuticals, Twombly, Erickson,* and *Iqbal*], we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr*, 652 F.3d at 1216. This standard applies to *Monell* claims and should govern future pleadings in this case.

**[5]** The district court abused its discretion when it denied AE the opportunity to allege additional facts supporting the claim that Portillo's, Wampler's, and Felix's alleged constitutional violations were carried out pursuant to County policy or custom. AE's allegation of plausible facts supporting such a policy or custom could have cured the deficiency in the *Monell* claim. *See Telesaurus*, 623 F.3d at 1003 (explaining that a court abuses its discretion when leave to amend is denied and amendment would not be futile); *see also Moss v.*

*U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) ("[R]equests for leave [to amend] should be granted with extreme liberality.") (citation and internal quotation marks omitted).[6]

### B.    State Law Claims

We address AE's statutory negligence claims by "ascertain[ing] and apply[ing] the existing California law." *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (citation omitted).

California public entities are not subject to common law tort liability; all liability must be pursuant to statute. *See* Cal. Gov't Code § 815; *see also Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 897 (2009). AE asserted two bases for the County's liability: (1) direct liability for breach of a mandatory duty, pursuant to California Government Code § 815.6; and (2) derivative liability for the negligent acts or omissions of County employees, pursuant to California Government Code § 815.2.

The district court dismissed both the direct and derivative liability claims against the County with prejudice and without leave to amend. AE waived any challenge to the dismissal of his direct liability claim by failing to "specifically and distinctly" argue the issue in his opening brief. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (citation omitted).[7]

The district court erred, however, when it conflated AE's

---

[6]The district court's error is made even more apparent by the fact that, at the time it denied AE leave to amend, our precedent required no more than the allegation that the government officials acted pursuant to an established policy or custom. *See, e.g., Whitaker*, 486 F.3d at 581.

[7]It does not suffice that AE, in the "Statement of the Case" and "Statement of Facts" sections of his opening brief, recited—almost verbatim— the bare allegations contained in his First Amended Complaint.

direct and derivative liability claims and dismissed the latter with prejudice. The court's legal error constitutes an abuse of discretion. *See Metrophones*, 423 F.3d at 1063.

**[6]** California public entities, including local governments, are derivatively liable for the negligent acts or omissions of public employees within the scope of their employment. *See* Cal. Gov't Code § 815.2(a). But if the employee successfully asserts immunity, the public entity is shielded from derivative liability. *See id.* § 815.2(b); *see also Johnson v. State*, 69 Cal. 2d 782, 787 (1968).

**[7]** Here, the district court granted AE leave to amend his negligence claims against Portillo, Wampler, and Felix. Because these County social workers remain as defendants in the case, the court erred when it dismissed all claims against the County with prejudice and certified judgment in the County's favor. As long as AE is permitted to allege that County employees were negligent, he must also be permitted to allege that the County is derivatively liable pursuant to California Government Code § 815.2(a).

On appeal, the County argues that the dismissal was proper because AE's pleadings make an affirmative showing that Portillo, Wampler, and Felix are entitled to the "discretionary act immunity" set forth in California Government Code § 820.2. *Caldwell v. Montoya*, 10 Cal. 4th 976 (1995) (in bank) (internal quotation marks omitted). We disagree.

California Government Code § 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Two principles California courts consider to determine whether discretionary act immunity applies are particularly relevant here. *See Barner v. Leeds*, 24 Cal. 4th 676, 684-85

(2000). First, "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Id.* (citation omitted). In other words, the California legislature did not intend to define discretion colloquially. *See id.* Instead, courts must distinguish between public employees' policy decisions and their operational, or ministerial, decisions. *See id.* at 685. Quasi-legislative policy decisions are protected from judicial scrutiny pursuant to a separation of powers rationale. *See id.* "On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Id.* (citation omitted).

Second, government defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who "consciously balanc[ed] risks and advantages . . ." *Johnson*, 69 Cal. 2d at 795 n.8. "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.* (citation omitted).

The County relies on several California Court of Appeal decisions involving foster care. *See, e.g., Cnty. of Los Angeles v. Superior Court*, 102 Cal. App. 4th 627, 643-46 (2002) (*Terrell R.*) (holding that county social workers are entitled to discretionary act immunity for all negligent foster care placement decisions and negligent supervision of the child in that placement "unless the social worker fails to provide specific services mandated by statute or regulation") (citation omitted). However, these decisions are not controlling because they conflict with the principles consistently followed in California Supreme Court decisions since *Johnson* and most recently reaffirmed in *Barner*. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010), *as amended* ("We are bound by pronouncements of the California Supreme Court on applicable state law . . .") (citation omitted).); *see also* Austen L. Parrish, *Avoiding the Mistakes of Terrell R.: The Undoing of the California Tort Claims Act*

*and the Move to Absolute Governmental Immunity in Foster Care Placement and Supervision*, 15 Stan. L. & Pol'y Rev. 267, 321 (2004) (proposing that the *Terrell R.* court erred by conflating direct and derivative liability claims and ignoring three decades of uniform Supreme Court precedent and the clear intent of the California legislature regarding discretionary act immunity).

The *Terrell R.* court's analysis sharply departed from the principles outlined in California Supreme Court precedent. The holding that social workers are immune from liability for all nonmandatory acts erroneously conflated direct and derivative liability by interpreting "discretionary" literally rather than legally. This interpretation is inconsistent with the California Supreme Court's instruction to construe the scope of the discretionary act immunity as narrowly as possible to preserve the separation of powers, and its instruction to determine whether an act is discretionary by distinguishing between the employee's operational and policy decisions. *See Barner*, 24 Cal. 4th at 685. The *Terrell R.* court also strayed by concluding that county social workers are entitled to discretionary act immunity for their allegedly negligent placement and supervision of foster children solely because, in the abstract, their job duties involve "complex task[s] requiring the consideration and balancing of many factors to achieve statutory objectives . . . [and] seem[ ] . . . to be . . . activit[ies] loaded with subjective determinations and fraught with major possibilities of . . . erroneous decision[s]." *Id.* at 644 (citation and internal quotation marks omitted). This conclusion conflicts with the California Supreme Court's admonishment that an employee's normal job duties are not determinative; the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and benefits. *See Johnson*, 69 Cal. 2d at 795 n.8.

**[8]** Applying the holdings of the California Supreme Court, and taking the allegations in the Complaint as true, we conclude that the County was not entitled to a dismissal of AE's derivative liability claims on the basis of discretionary act immunity for the allegedly negligent placement and supervision of AE by Portillo, Wampler, and Felix. *See Elton v. Cnty. of Orange*, 3 Cal. App. 3d 1053, 1058 (1970) (explaining that the required showing of "balancing the risks and advantages" was not and could not have been made by the county at the demurrer stage).[8] It would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants.

**[9]** The district court abused its discretion by dismissing the derivative liability claims against the County with prejudice and without leave to amend when it granted leave to amend as to the allegations regarding Portillo, Wampler, and Felix. The County's derivative liability is tied directly to the negligence of, or successful assertion of immunity by, its employees. *See* Cal. Gov't Code § 815.2. Nevertheless, the district court concluded that the County's "alleged liability [was] clear and distinct from claims against and liability of other defendants." This holding was contrary to California law.

In sum, AE may have viable claims against the County under state law and under federal law. We express no view as to the ultimate disposition of those claims. The success of the state law claim hinges on the liability of the social workers

---

[8]We note that neither *Terrell R*. nor *Becerra v. County of Santa Cruz*, 68 Cal. App. 4th 1450 (1998), on which the County also relies, found immunity at the pleadings stage. Rather, both cases addressed appeals of orders resolving motions for summary judgment. *See Terrell R*., 102 Cal. App. 4th at 633; *Becerra*, 68 Cal. App. 4th at 1454. Indeed, the *Terrell R*. court distinguished *Elton* on the basis that "appeal . . . followed a demurrer, not a summary judgment. . . ." *Terrell R*., 102 Cal. App. 4th at 645 n.5.

who remain as defendants. And it remains to be seen whether AE can meet the pleading requirements set forth in *Iqbal* for his § 1983 claim. However, he must be given the opportunity to try to meet those requirements.

## *CONCLUSION*

**[10]** The district court's order dismissing the claims against the County without leave to amend is REVERSED and the entry of judgment in favor of the County is VACATED. The case is REMANDED for further proceedings consistent with this opinion.