FILED

JAN 03 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-13-1229-PaTaD |
| TRACHT GUT, LLC, | Bk. No.   SV 12-20308-MT |
| Debtor. | Adv. No.   SV 12-01433-MT |
| TRACHT GUT, LLC, | |
| Appellant, | |
| v. | **O P I N I O N** |
| COUNTY OF LOS ANGELES TREASURER AND TAX COLLECTOR; DAVID HAGHNAZARZADEH; YURI VOLODINSKY, | |
| Appellees. | |

Argued and Submitted on November 22, 2013
at Pasadena, California

Filed – January 3, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen Tighe, U.S. Bankruptcy Judge, Presiding

Appearances:   Mark Eugene Goodfriend argued for appellant Tracht Gut, LLC.  Barry S. Glaser argued for appellee County of Los Angeles Treasurer and Tax Collector.

Before:  PAPPAS, TAYLOR and DUNN, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

Chapter 11[1] debtor Tracht Gut, LLC ("Debtor") appeals the orders of the bankruptcy court dismissing without leave to amend its adversary complaint against appellees Los Angeles County Treasurer and Tax Collector ("the County"), David Haghnazarzadeh ("Haghnazarzadeh") and Yuri Volodinsky ("Volodinsky") under Rule 7012 and Civil Rule 12(b)(6), and denying reconsideration of that order under Rule 9024 and Civil Rule 60(b)(1). We AFFIRM.

**FACTS**

This appeal concerns Debtor's efforts to avoid the County's prepetition tax sales of two parcels of real property formerly owned by Debtor.

The first property is located on Hatteras Street in Tarzana, California (the "Hatteras Property"). Real property taxes owed to the County had not been paid on the Hatteras Property since 2008. Pursuant to California tax law, the properties were "tax defaulted" and "subject to [the County's] power to sell" three years after default. Debtor purchased the Hatteras Property from E.R. Financial Services & Development, Inc. ("E&N"), NH Simpson Partnership, OF General Partnership, and EM Partnership on April 9, 2012, for $60,000, subject to three deeds of trust totaling $920,000. Debtor recorded the grant deed on July 11, 2012.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

The second property is located in San Fernando, California (the "San Fernando Property" and together, the "Properties"). Taxes on the San Fernando Property also had not been paid since 2008. On April 9, 2012, E&N transferred the San Fernando Property to Debtor for "valuable consideration."[2] The record does not indicate if there were any encumbrances on the San Fernando Property at the time of that sale. Debtor recorded a grant deed on November 26, 2012, one day before filing its bankruptcy petition.

On August 31, 2012, the County served a Notice of Auction for a tax sale of the Properties on all interested parties; the sale was set for October 22, 2012. The Notice of Auction was published on that date in the Los Angeles Daily News. The record indicates that Debtor, as record owner of the Hatteras Property, was notified of the auction. Debtor is not on the list of parties given notice concerning the sale of the San Fernando Property, likely because the record owner of the San Fernando Property in August 2012 was still E&N, who received notice.

The County conducted the tax sales of the Properties at public auction on October 22, 2012. The Hatteras Property was sold to appellee Haghnazarzadeh for $300,000, subject to the three deeds of trust. The San Fernando Property was sold to appellee Volodinsky for approximately $100,000.

Debtor filed its petition for relief under chapter 11 on

_____

[2] The recorded grant deed, however, also provided that the transfer was a "bona fide gift and grantor received nothing in return." The parties do not dispute that Debtor was the owner of the San Fernando Property.

-3-

November 27, 2012. On December 11, 2012, Debtor filed schedules. In Schedule A, Debtor claimed to own both of the Properties and indicated that:

> A disputed tax sale occurred on or about October 21, 2012. The sales price was far less than the market value of this property. Debtor attempted to pay the taxes in full, which the [County] refused to take. As of the date of this petition, no Tax Deed has been recorded and Debtor disputes the validity of the transfer as an avoidable transfer.

The tax deeds transferring title of the Hatteras Property to Haghnazarzadeh and the San Fernando Property to Volodinsky were both recorded by the County on December 13, 2012.

On December 12, 2012, Debtor commenced the adversary proceeding at issue in this appeal. In its complaint against the Appellees, Debtor asked the bankruptcy court to grant relief on five separate claims: (1) to avoid the tax sales as fraudulent transfers; (2) for declaratory judgment; (3) for an injunction; (4) for violation of the automatic stay; and (5) for unjust enrichment.

The County filed a motion to dismiss the complaint on January 22, 2013, citing Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012. The County argued that Debtor, on all five counts, had failed to state an adequate claim for relief. According to the County, there were no facts alleged in the complaint to support granting any relief to Debtor on its claims. Additionally, the County argued that the Properties were each sold before bankruptcy was commenced, at a regularly scheduled tax sale with competitive bidding procedures, all in compliance with applicable state law. As a result, the County contended, the purchase price paid by the buyers of the

-4-

Properties should be conclusively presumed to represent reasonably equivalent value and, therefore, there was no legal basis to avoid the tax sales as fraudulent transfers under § 548(a). Further, since the tax sales occurred prepetition, the County argued that the Properties were not property of the estate under § 541 and thus were not protected by the automatic stay when Debtor's bankruptcy petition was filed. Haghnazarzadeh filed a substantially similar motion to dismiss under Civil Rule 12(b)(6) on January 24, 2013.[3]

Debtor responded to the dismissal motions on February 11, 2013. It generally repeated its arguments that the sales were not made for reasonably equivalent value and, thus, were avoidable.

The hearing on the motions to dismiss was set for February 20, 2013. Before the hearing, the bankruptcy court posted a tentative ruling providing, in part:

> The Complaint is comprised purely of threadbare recitals of the elements of the causes of action and conclusory statements. As it reads, the Complaint and the allegations therein, are not entitled to the assumption of truth. Most of the information surrounding the events in question (dates, relationship among parties, etc.) is fleshed out solely within the [motions to dismiss]. . . . For all the reasons stated above, the Court shall dismiss the Complaint with leave to amend.

The bankruptcy court's tentative ruling also indicated its intent to dismiss Debtor's claims for declaratory relief and an injunction because they were not claims, but merely forms of relief.

---

[3] Volodinsky did not actively participate in the bankruptcy court proceedings.

-5-

At the hearing on the motions to dismiss on February 20, 2013, the bankruptcy court heard arguments from counsel for Debtor, the County and Haghnazarzadeh. The bankruptcy court concluded that the complaint should be dismissed and that amendment of the complaint would be an exercise in futility.

> Well, I generally allow one amendment . . . but this complaint was unbelievably bad and just clearly was such a placeholder to see if you could stab at some legal theory that might slow things down, but it was shockingly bad, and now I'm thinking about the legal theories that you've really refocused my attention on here at the argument. . . . I agree [with the County] that I don't see what you could plead to get around, and you haven't convinced me, Mr. Brownstein [Debtor's counsel], that you have some theory that can allow you to plead facts which would warrant relief under [§] 548. . . . So I'm going to grant the motion to dismiss with prejudice for the reasons stated in the tentative as supplemented by the argument here today.

Hr'g Tr. 10:18—11:12, April 20, 2013.

The bankruptcy court entered an order granting the motions to dismiss on March 13, 2013 (the "Dismissal Order"), stating that:

1. The Debtor can never amend the Complaint to state a viable cause of action as the real properties foreclosed upon at the duly conducted tax sale of the subject properties held on October 22, 2012 as set forth in the Complaint, were and are not properties of the Debtor's estate for purposes of 11 U.S.C. § 541;

2. [t]he Debtor could not properly allege that the County's post-petition recording of the deeds violated the automatic stay in 11 U.S.C. § 362 as it was solely a ministerial act;

3. [t]he Debtor could not properly allege that the duly conducted tax sale of the subject properties could be the basis of an action under 11 U.S.C. §§ 548 or 549; and

4. [t]he Court thereby dismissed the Complaint, with prejudice.

-6-

On March 27, 2013, Debtor filed a motion for reconsideration of the Dismissal Order, arguing that "the judgment/order(s) were entered as a result of surprise, excusable mistake, inadvertence and/or neglect and/or error of law, that good cause exists therefore, and that such relief would be in the interests of justice."[4] Attached to the reconsideration motion was a proposed First Amended Complaint. The First Amended Complaint contained additional factual allegations for the first claim for avoidance of the tax sales as fraudulent transfers, but simply restated without factual support the second through fifth claims.

On May 7, 2013, the bankruptcy court entered a memorandum of decision and an order denying reconsideration. The court also concluded that Debtor's proposed First Amended Complaint was not viable:

> The fact that Debtor now has a proposed amended complaint is too little too late. . . . Debtor had ample opportunity to address the lack of a viable complaint prior to the filing of the [dismissal motions]. . . . There is no explanation why Debtor did not complete due diligence or amend within the 21 days following the filing of the complaint. Fed. R. Civ. P. 15(a)(1)(A). There is also no explanation why Debtor did not complete due diligence and amend in response to the [Civil Rule 12(b)(6) motions] as opposed to filing an Opposition. Fed. R. Civ. P. 15(a). That Debtor's counsel filed an opposition to the [dismissal motions] and now admits that his complaint was conclusory and

---

[4] Debtor's motion cites Civil Rules 55, 59 and 60, applicable in adversary proceedings by Rules 7055, 9023 and 9024, as authority for reconsideration, but Debtor only argued under Civil Rule 60(b)(1). The bankruptcy court also analyzed Debtor's motion under that rule. Under these circumstances, Debtor's motion should have been treated as one under Civil Rule 59(e). Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001). However, since the outcome of Debtor's request would be the same under either standard, we also consider only Debtor's Civil Rule 60(b)(1) arguments.

lacked specificity tests the spirit of Rule 11. . . . Debtor failed at every stage of the litigation process to provide the grounds of its entitlement to relief. Debtor's failure to timely conduct due diligence and amend evidences Debtor's intent to merely delay the litigation process. . . . Debtor's failure to present a timely viable complaint was purposeful and a delaying tactic. The Court declines to exercise its discretion in favor of a party whose "gross negligence" has caused the mistake from which relief is sought.

Debtor filed a timely appeal of the Dismissal Order and the order denying reconsideration on May 14, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (H).[5] We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in dismissing Debtor's complaint under Civil Rule 12(b)(6).

Whether the bankruptcy court abused its discretion in declining to allow Debtor to file an amended complaint.

Whether the bankruptcy court abused its discretion in denying Debtor's motion for reconsideration of the dismissal order.

---

[5] This is a proceeding which, in part, involved Debtor's attempt to recover a fraudulent transfer from third parties. Thus, the constitutional power of the bankruptcy court to enter a final judgment resolving such claims may be in doubt for the reasons discussed in Stern v. Marshall, 131 S. Ct. 2594 (2011) and Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553 (9th Cir. 2011), cert. granted, 133 S. Ct. 2880 (2013). Since none of the parties, either in the bankruptcy court or this appeal, have questioned the authority of the bankruptcy court, we also express no opinion concerning that topic.

-8-

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's order dismissing a complaint under Civil Rule 12(b)(6).  <u>AE ex rel. Hernandez v. Cnty. of Tulare</u>, 666 F.3d 631, 636 (9th Cir. 2012).  A dismissal without leave to amend and with prejudice is reviewed for abuse of discretion.  <u>Id.</u> at 636, 637-38.

Denial of a motion for reconsideration under Civil Rule 60(b)(1) is reviewed for abuse of discretion.  <u>Morris v. Peralta (In re Peralta)</u>, 317 B.R. 381, 385 (9th Cir. BAP 2004).  A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible or without support from evidence in the record.  <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**I.**

**The bankruptcy court did not err in dismissing Debtor's complaint.**

<u>A.</u>     <u>The bankruptcy court did not err in dismissing Debtor's claim for fraudulent transfer</u>.

Under Rule 7012 and Civil Rule 12(b)(6), a defendant may ask by motion that a complaint be dismissed if it fails to "state a claim upon which relief can be granted."  In reviewing a Civil Rule 12(b)(6) motion, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1068 (9th Cir. 2011); <u>Newcal Indus., Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).  However, the

trial court need not accept as true conclusory allegations in a complaint or legal characterizations cast in the form of factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). To avoid dismissal under Civil Rule 12(b)(6), a plaintiff must aver in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A dismissal under Civil Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).

In deciding to dismiss it, the bankruptcy court described Debtor's original complaint as "unbelievably bad and just clearly was such a placeholder to see if [Debtor] could stab at some legal theory that might slow things down, but it was shockingly bad[.]" Hr'g Tr. 10:18—20, April 20, 2013. We agree.

Debtor's first claim for relief in that complaint, which asserted that the tax sales were avoidable fraudulent transfers, consisted of a verbatim recitation of § 548(a)(1)(B), followed by a single sentence:

> As such, pursuant to 11 U.S.C. Sections 548 and 549, as well as on state law grounds, including, but not limited to, California Civil Code 3275, the tax sales of the Properties conducted by Defendants should be avoided and set aside.

Simply put, even under the liberal rules referenced above, Debtor's cavalier approach to pleading a claim for relief is inadequate. The complaint plainly fails to allege the facts

-10-

necessary to state a claim for avoidance of the tax sales.

As to Debtor's four other claims for relief, two appear, on their faces, to be legitimate claims (i.e., unjust enrichment and violation of the automatic stay). However, like the claim for fraudulent transfer, they too are cast entirely as conclusory statements, not facts. As to Debtor's "claim" for an injunction and for declaratory relief, while the bankruptcy court correctly noted that injunction and declaratory relief are remedies, the court's dismissal of those claims solely on that basis was likely harmless error. Courts routinely consider injunctive and declaratory relief "claims" as demands for relief, provided that there are other claims and facts asserted in the complaint that would warrant such remedies. <u>Wankowski v. Taylor Bean & Whitaker Mortg. Corp.</u>, 2010 WL 5141745, at *3 (D. Nev. Dec. 13, 2010); <u>Infor Global Solutions (Michigan), Inc. v. Hanover Foods Corp.</u>, 2009 WL 2778258, at *2 (N.D. Ga. Aug. 28, 2009). In this case, though, there were no facts asserted in the claims for fraudulent transfer, violation of the stay, or unjust enrichment to support injunctive or declaratory relief, so the bankruptcy court's dismissal of those claims simply because they were incorrectly labeled "claims" was harmless error. Further, Debtor did not argue that dismissal of the claims for injunctive relief, declaratory relief, and unjust enrichment was error in its opening brief on appeal, and any such argument is therefore waived. <u>Ore. Natural Desert Ass'n v. Locke</u>, 572 F.3d 610, 614 n.3 (9th Cir. 2009) ("this court will not address claims not argued in the opening brief").

At bottom, none of Debtor's claims presented "sufficient

-11-

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Indeed, even liberally read, Debtor's complaint presented no factual matter to support its prayer for relief. The bankruptcy court's decision to dismiss the complaint was proper.

B.  The bankruptcy court did not err in dismissing Debtor's claim for violation of the automatic stay.

As mentioned above, Debtor did not argue in its opening brief that the bankruptcy court erred in dismissing the other four claims asserted in its original complaint, and we will not ordinarily address matters not argued in the opening brief. Locke, 572 F.3d at 614 n.3. However, since the County has addressed the stay violation claim in its brief, we review it here.

In the original complaint, Debtor claimed that its legal title in the Properties was not extinguished until the tax deeds were recorded. Because this occurred postpetition, Debtor argued that the recordings of the deeds violated the automatic stay under § 362(a). There are at least two flaws in Debtor's argument.

First, Debtor's right of redemption as to the Properties lapsed the day before the tax sales occurred. Cal. Rev. & Tax Code § 3707. A tax deed subsequently provided to a purchaser "conveys title to the purchaser free of all encumbrances of any kind." Cal. Rev. & Tax Code § 3712.[6] Under these facts, since

---

[6]  There is California case law suggesting that a foreclosure sale induced by fraud or irregularities might be set aside and, consequently, the power to redeem revived. Luna v.
(continued...)

-12-

Debtor's interest in the Properties lapsed before it filed for bankruptcy, the Properties never became property of the estate under § 541, and any action by the County concerning those Properties would not run afoul of the automatic stay under § 362(a).

Secondly, as the bankruptcy court ruled, the recording of the tax deeds postpetition was a ministerial act and, as such, would not violate the automatic stay. The Ninth Circuit adopted the ministerial act exception to the automatic stay in McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a [judicial] proceeding" for purposes of possible violations of the automatic stay). In Pettit, the court cited with approval to a First Circuit case that extended the ministerial act exception to acts of public officials. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 973-74 (1st Cir. 1997) ("Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial."). Cal. Rev. & Tax Code § 3708.1 provides: "Upon execution [of the tax sale and payment of the purchase price] the tax collector shall immediately record the deed with the county recorder and pay the recording fees." There is no indication in this or related provisions of California law that

---

⁶(...continued)
Citibank, N.A., 202 Cal. App.4th 89, 104 (2011). However, Debtor has not argued either in the bankruptcy court or in this appeal that there were any irregularities or fraud in the tax sale.

the tax collector has any discretion in recording the deed; he instead is commanded to record it.

On this record, we conclude that the County's recording of the tax deeds was a ministerial act, and the bankruptcy court did not err in ruling that the recordings did not violate the automatic stay.

## II.

**Debtor could not amend the complaint as a matter of right.**

On appeal, Debtor apparently concedes that its complaint was deficient factually: "The [bankruptcy] court admittedly did not have the requisite factual allegations to render a decision[.]" Debtor's Op. Br. at 8.[7] Rather, Debtor's focus on appeal is its contention that the bankruptcy court abused its discretion when it denied Debtor's request to amend the complaint.

Debtor's first argument is that, under these facts, it could amend the complaint at any time as a matter of right. To support this contention, Debtor argues that Civil Rule 15(a)[8] allows a

---

[7] At oral argument before the Panel, counsel for Debtor again conceded that the bankruptcy court did not err in dismissing the original complaint. He conceded that the First Amended Complaint Debtor attempted to submit with its reconsideration motion was also deficient in pleaded facts.

[8] Civil] Rule 15(a) provides in relevant part that:

Amended and Supplemental Pleadings.

(a) Amendments Before Trial.

　(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
　　　(A) 21 days after serving it, or
　　　(B) if the pleading is one to which a responsive
(continued...)

-14-

plaintiff to amend a complaint once as a matter of course, and that the rule does not treat a motion to dismiss under Civil Rule 12(b)(6) as a "responsive pleading" that would terminate the right to file an amended pleading within 21 days. Debtor cites several cases that, arguably, support its position.[9]

Unfortunately for Debtor, the version of Civil Rule 15 upon which it relies in its briefing was amended in 2009, after the cases cited in Debtor's brief were decided. A newly added provision, Civil Rule 15(a)(1)(B), dictates that the right to amend once as a matter of course terminates 21 days after service of a motion under Civil Rule 12(b), (e), or (f). The Advisory Committee Notes to the 2009 Amendments provide instruction regarding the effects of the change:

> Former Rule 15(a) addressed amendment of a pleading to which a responsive pleading is required by distinguishing between the means used to challenge the pleading. Serving a responsive pleading terminated the

[8](...continued)
pleading is required, 21 days after service of a responsive pleading <u>or 21 days after service of a motion under Rule 12(b)</u>, (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Civil Rule 15(a) (2013) (emphasis added).

[9] <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101 (7th Cir. 1984); <u>Kelly v. Del. River Jt. Comm'n</u>, 187 F.2d 93 (3d Cir. 1951); <u>McGruder v. Phelps</u>, 608 F.2d 1023 (5th Cir. 1979); <u>Adams v. Campbell City. School Dist.</u>, 483 F.2d 1351 (10th Cir. 1973); <u>Smith v. Blackledge</u>, 451 F.2d 1201 (4th Cir. 1971); <u>Nolen v. Fitzharris</u>, 450 F.2d 958 (9th Cir. 1971); <u>Smith v. Cal.</u>, 336 F.2d 530 (9th Cir. 1964).

-15-

right to amend. Serving a motion attacking the pleading did not terminate the right to amend, because a motion is not a "pleading" as defined in Rule 7. The right to amend survived beyond decision of the motion unless the decision expressly cut off the right to amend.

The distinction drawn in former Rule 15(a) is changed [so that] the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings.

[Civil Rule] 15 Advisory Committee Notes (2009).

The County's motion was filed on January 22, 2013. Under the applicable revised version of Civil Rule 15(a)(1), Debtor's right to amend its complaint as a matter of course expired on February 12, 2013. Rather than file an amended complaint within that time, Debtor was instead satisfied to file only an opposition to the motion to dismiss on February 11, 2013. In other words, Debtor's rule and case law authorities are no longer good law.[10]

**III.**

**The bankruptcy court did not abuse its discretion when it denied Debtor's request to file an amended complaint.**

Since Debtor's right to file an amended complaint as a matter of course expired on February 12, 2013, under Civil Rule 15(a)(2), Debtor was required either to obtain the County's

---

[10] It is puzzling why Debtor continues to make this argument on appeal. In its Memorandum Decision, the bankruptcy court explicitly cited to Civil Rule 15(a)(1)(B) as an example of Debtor's complicity in delaying judicial process: "There is also no explanation why Debtor did not complete due diligence and amend in response to the [motions to dismiss], as opposed to filing an opposition. Fed. R. Civ. P. 15(a)(1)(B)."

consent or leave of the bankruptcy court to amend its complaint. Here, the County did not consent to Debtor's request to amend its complaint, and Debtor faults the bankruptcy court for refusing to grant leave to amend.

Civil Rule 15(a)(2) requires that the trial court freely grant leave to amend "when justice so requires." There is extensive case law examining the relevant considerations for a trial court's decision to grant or deny leave to amend a complaint. The best known, and most frequently cited, precedent is the Supreme Court's decision in <u>Foman v. Davis</u>, 371 U.S. 178 (1962). In <u>Foman</u>, the Court considered, among other issues, whether a district court abused its discretion by denying leave to amend a complaint without providing any reasons for its decision. The Court instructed that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the appealing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

<u>Id.</u> at 182. Based on this decision, the exceptions to the policy and rule requiring a liberal approach to requests to amend a complaint have come to be known as the "Foman Factors."

The Ninth Circuit has employed the Foman Factors to review whether a trial court properly exercised its discretion in determining whether to grant leave to amend a complaint. <u>Sonoma City. Ass'n of Retired Emples. v. Sonoma City</u>, 708 F.3d 1109, 1118 (9th Cir. 2013); <u>Griggs v. Pace Am. Group, Inc.</u>, 170 F.3d 877, 880 (9th Cir. 1999) (holding that a trial court should

decide a motion to amend a complaint by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility). Of the Foman Factors, the Ninth Circuit has held that a trial court's denial of leave to amend for futility, alone, will be upheld if it is clear that the complaint could not be saved by any amendment. Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010). In this case, the bankruptcy court based its decision to deny leave to Debtor to file an amended complaint on two of the Foman Factors, explaining that an amendment would be futile, and concluding that Debtor had engaged in undue delay in proposing the amendment. These reasons constitute an adequate basis to sustain the bankruptcy court's decision. Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013) (denying leave to amend for futility and undue delay).

As to undue delay, the bankruptcy court determined that,

> There is no explanation why Debtor's counsel did not complete due diligence prior to filing the complaint. Debtor's counsel simply states that he intended to meet and confer with the principal of Debtor and Debtor's real estate attorney, and then he intended to file an amended complaint.

The bankruptcy court then noted that Debtor could not satisfactorily explain why it did not complete due diligence and seek to amend the complaint (a) within the 21-day period after filing the original complaint, (b) within the 21-day period following the filing of the County's Civil Rule 12(b)(6) motion, (c) instead of, or in conjunction with, filing an opposition to the Civil Rule 12(b)(6) motion, or (d) otherwise prior to the hearing on the County's motion to dismiss. Indeed, Debtor made

-18-

no attempt to file an amended complaint until the Reconsideration Motion, three months after filing the original complaint. As the bankruptcy court observed,

> Debtor failed at every stage of the litigation process to provide the grounds of its entitlement to relief. Debtor's failure to timely conduct due diligence and amend evidences Debtor's intent to merely delay the litigation process.

Our review of the record confirms that the facts support the bankruptcy court's determination that Debtor engaged in undue delay in attempting to amend the complaint. Thus, at least one Foman Factor supports the court's decision to deny leave to amend the complaint.

Another and compelling ground for denying leave to amend Debtor's complaint is futility. Ecological Rights Found., 713 F.3d at 520. Indeed, a determination that any amendment would be futile requires the trial court to dismiss the complaint with prejudice. Mirmehdi v. United States, 689 F.3d 975, 985 (9th Cir. 2012) ("However, a party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile. See, e.g., May Dep't Store v. Graphic Process Co., 637 F.2d 1211, 1216 (9th Cir. 1980)."); Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (observing that although leave to amend is to be "freely given when justice so requires," denial of a motion to amend is proper if it is clear "that the complaint would not be saved by any amendment.").

Here, the bankruptcy court determined that,

> The Debtor could not properly allege that the duly conducted tax sale of the subject properties could be the basis of an action under 11 U.S.C. [§]§ 548 or

549.[11]

In other words, the bankruptcy court concluded that any attempt by Debtor to amend the first claim for relief would be futile because a duly conducted tax sale under California law presumptively provides for reasonably equivalent value, and thus the essential condition for avoidance of the sales as fraudulent transfers, i.e., for less than reasonably equivalent value, could not be established.  We agree with the bankruptcy court.

An analysis of the relationship of tax foreclosure sales to "reasonably equivalent value" for purposes of § 548(a)(1)(B) should begin with a review of the U.S. Supreme Court's opinion in BFP v. Resolution Trust Corp., 511 U.S. 531 (1994).  In BFP, the Supreme Court addressed whether a regularly conducted prebankruptcy mortgage foreclosure sale gives rise to a conclusive presumption that the price obtained at that sale was for reasonably equivalent value such that the sale could not later be avoided under § 548(a) as a constructively fraudulent transfer. In that case, BFP held title to a parcel of real property encumbered by a deed of trust.  After BFP defaulted on

[11] It was never clear in Debtor's complaint why it referred to § 549, the Code provision dealing with avoidance of unauthorized postpetition transfers, in the context of the first claim for fraudulent transfer, a claim which, by definition, deals solely with prebankruptcy transfers.  Perhaps Debtor was conflating the claim for fraudulent transfer with the claim for violation of the automatic stay.  As to the other claims for injunction, declaratory judgment, and unjust enrichment, Debtor has not discussed these claims in its opening brief and we will not address them.  Ore. Natural Desert Ass'n v. Locke, 572 F.3d 610, 614 n.3 (9th Cir. 2009) ("this court will not address claims not argued in the opening brief").

-20-

the loan payments, the creditor properly noticed a foreclosure sale in compliance with applicable California law. At that sale, the property was purchased by a third party for $433,000. After BFP initiated a chapter 11 case, it filed a complaint to avoid the foreclosure sale and transfer to the third party as a constructively fraudulent transfer under § 548(a), arguing that, as compared to the sale price, the property was actually worth $725,000 at the time of the sale. The bankruptcy court held that the foreclosure sale was not collusive or fraudulent because it was conducted in compliance with state law, and so the sale could not be avoided. This Panel and the Ninth Circuit affirmed. Id.[12]

On appeal, the Supreme Court held that fair market value was not the appropriate measure of "reasonably equivalent value" under § 548(a) because market value, as commonly understood, has no applicability in the forced-sale context; indeed, it is "the very antithesis of forced-sale value." Id. at 537. The Court held that § 548(a) "requires judicial inquiry into whether the

---

[12] By its ruling in BFP, the Supreme Court effectively endorsed what was known as the "Madrid Rule," a term attributable to this Panel's decision in Lawyers Title Insurance Corp. v. Madrid (In re Madrid), 21 B.R. 424 (9th Cir. BAP 1982), aff'd, 725 F.2d 1197, 1199 (9th Cir. 1982). The Panel reiterated the Madrid Rule in deciding the appeal that eventually led to the Supreme Court's BFP decision. BFP v. Imperial Savings & Loan Ass'n (In re BFP), 132 B.R. 748, 750 (9th Cir. BAP 1991)("A non-collusive and regularly conducted nonjudicial foreclosure sale prior to the filing of a bankruptcy case cannot be challenged as a fraudulent conveyance because the consideration received in such a sale establishes 'reasonably equivalent value' as a matter of law."), aff'd, 974 F.2d 1144 (9th Cir. 1992), aff'd sub nom., BFP v. Resolution Trust Corp., 511 U.S. 531 (1994).

foreclosed property was sold for a price that approximated its worth at the time of sale." Id. at 538-39. Recognizing that the state mortgage foreclosure regulatory scheme is designed to achieve just such a result, the Court held that "[a]bsent a clear statutory requirement to the contrary, we must assume the validity of this state-law regulatory background and take due account of its effect." Id. at 539.

The Supreme Court then reviewed the history of state foreclosure laws:

> Foreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. . . . When these procedures have been followed, however, it is "black letter" law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside (under state foreclosure law, rather than fraudulent transfer law) if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."

Id. at 542. A state's interest in its real estate laws was at the heart of the BFP Court's analysis: "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." Id. at 545.

Many of the elements of the BFP analysis are also applicable to state tax foreclosure sales. As noted by the Court, federal courts should pay considerable deference to state law on matters relating to real estate, and where there has been "notice to the defaulting party, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and

strict adherence to prescribed bidding rules and auction procedures," a tax sale is likely to yield reasonably equivalent value for the foreclosed property. Indeed, numerous other courts have applied the teachings of the Supreme Court in BFP in analyzing whether a conclusive presumption arises that reasonably equivalent value is present as the result of regularly-conducted state tax-defaulted property sales.

Notably, two circuit courts have extended BFP's holding to a non-collusive tax sale of real property conducted in accordance with state law. In Kajima v. Girandole Intel Ltd. Lab. Co. (In re Grandote Country Club Co., Ltd.), 252 F.3d 1146 (10th Cir. 2001), the Tenth Circuit ruled that:

> [T]he decisive factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure.

Id. at 1152. The Kajima court compared the requirements set forth in BFP to the Colorado tax sale procedures and found those procedures to be consistent with BFP. The court therefore held that a Colorado tax sale was for reasonably equivalent value. Id.

Earlier, the Fifth Circuit had applied the teachings of BFP to tax-defaulted property sales under Oklahoma law. The court determined that not only was BFP applicable to determining reasonably equivalent value under § 548(a) regarding a prepetition tax sale, but also to determining present fair equivalent value under § 549 concerning a post-petition tax sale. T.F. Stone Co. v. Harper (In re T.F. Stone Co.), 72 F.3d 466, 468-69 (5th Cir. 1995).

-23-

Bankruptcy courts have also applied <u>BFP</u>'s holding in the tax sale context. <u>Russell-Polk v. Bradley (In re Russell-Polk)</u>, 200 B.R. 218, 220-22 (Bank. E.D. Mo. 1996); <u>Golden v. Mercer County Tax Claim Bureau (In re Golden)</u>, 190 B.R. 52, 58 (Bankr. W.D. Pa. 1995); <u>Holla v. Myers (In re Holla)</u>, 184 B.R. 243, 252 (Bankr. M.D.N.C. 1995); <u>Lord v. Neumann (In re Lord)</u>, 179 B.R. 429, 432-35 (Bankr. E.D. Pa. 1995); <u>McGrath v. Simon (In re McGrath)</u>, 170 B.R. 78, 82 (Bankr. D.N.J. 1994).

Informed by this case law, we conclude that the holding in <u>BFP</u> should be applied to regularly conducted sales of tax-defaulted real property in California, where there is a substantial lead time before the commencement of foreclosure proceedings, there is publication of a notice of the sale, and there is strict adherence to prescribed competitive bidding rules and auction procedures as formulated in the state law. Put another way, based on the procedural requirements of California law, the tax-default sales of the Properties held in this case on October 22, 2012, were for reasonably equivalent value.

Cal. Rev. & Tax Code § 3691(a)(1)(A) provides that, after a property has become tax-defaulted, the tax collector shall have the power to sell all or any part of a tax-defaulted property that has not been redeemed. The sale of a non-residential commercial property may take place three years after the tax default. <u>Id.</u> Cal. Rev. & Tax Code § 3691.1, 3691.2 and 3691.4 require that when the property becomes available for tax sale, the tax collector must file notice with the county clerk and the notice is recorded. Cal. Rev. & Tax. Code § 3699 requires that the county board of supervisors must approve the tax sale.

-24-

Debtor has not argued that any of these provisions were not satisfied.

Cal. Rev. & Tax Code § 3701 provides that the notice of a tax sale must be given to interested parties no less than 45 days, nor more than 120 days, before the proposed sale. The Notice of Auction concerning these sales was dated August 31, 2012, 53 days before the date set for the auction, October 22, 2012.

Cal. Rev. & Tax Code § 3702 requires that the notice of sale be published in a newspaper of general circulation, once a week for three consecutive weeks. Cal. Rev. & Tax Code § 3704 requires extensive information in the notice of sale: (a) date, time and place of the sale; (b) location of publicly available computer workstations if the sale allows internet bids; (c) description of the property; (d) name of last assignee of the property; (e) minimum bid; (f) statement that right of redemption ceases day before the sale; (g) statement that parties in interest have right to file claims in excess of liens and costs to be recovered; (h) statement that parties will be notified of any excess proceeds; ( I) if property remains unsold after the scheduled sale, date, time, and place of subsequent sale; (j) deposit if required for bidding; (k) if property purchased by credit bid, notice that right of redemption would revive if full payment not made by a date specified [not relevant in this appeal]. In this case, the sale notice was published in the Los Angeles Daily News. Debtor has not challenged that the notice requirements were not satisfied.

Cal. Rev. & Tax Code § 3691(a)(3)(A) and Cal. Civ. Code

§ 2924b(c)(1) require that the notice of the sale be sent by certified mail to all parties in interest, including the defaulting parties, within the 45-120 day period. Debtor has not argued that this notice was not properly given.

Finally, Debtor does not challenge that the actual sales were not regularly conducted in compliance with all applicable statutes, including Cal. Rev. & Tax Code § 3693, which requires that all tax sales "shall be at public auction to the highest bidder"; and Cal. Rev. & Tax Code § 3691(a)(1)(A), which provides that "[a]ny person, regardless of any prior or existing lien on, claim to, or interest in the property, may purchase at the sale."

In addition, Cal. Rev. & Tax Code § 3701 provides that the property owner's right of redemption expires at the close of business of the last business day preceding the sale. Debtor did not redeem the Properties prior to the sales. Cal. Rev. & Tax Code § 3708 provides that the tax collector shall execute a deed to the purchaser for the property; the recorded tax deeds are in the excerpts of record submitted in this appeal. This is significant, because Cal. Rev. & Tax Code § 3711 provides that the deeds issued by the tax collector are "conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed."

Debtor has not argued in the bankruptcy court or this appeal that the tax sales of the Properties did not comply with the applicable state statutes. To the contrary, as noted above, the record supports that there was an appropriate lead time before the commencement of foreclosure proceedings, notice was properly given to the defaulting parties, there was publication of a

notice of sale, and there was competitive bidding at a public auction in strict adherence to prescribed competitive bidding rules and auction procedures as clearly formulated in the California statutes. Under BFP and the cases applying the rule in that decision to state tax sales, the transfer of the Properties in this case at the sales on October 22, 2012, resulted in a conclusive presumption that the sales were for reasonably equivalent value. Therefore, the transfers were not subject to avoidance under § 548(a), and the bankruptcy court did not abuse its discretion in declining to allow Debtor an opportunity to file an amended complaint, since any amendment would have been a futile gesture.

In sum, the bankruptcy court did not abuse its discretion when it declined to allow Debtor to file an amended complaint.

**IV.**

**The bankruptcy court did not abuse its discretion in denying reconsideration of its Dismissal Order.**

Debtor asked the bankruptcy court to reconsider its Dismissal Order under Civil Rule 60(b)(1), incorporated by Rule 9024. That rule provides that, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]" In the bankruptcy court, Debtor argued it should be granted relief based on excusable neglect.

A careful review of the motion for reconsideration, and Debtor's brief in this appeal, shows that Debtor does not discuss or identify the "neglect" from which it wishes to be excused.

-27-

Debtor's arguments are solely directed to alleged errors by the bankruptcy court in dismissing the complaint with prejudice. Debtor likewise does not address the concerns expressed by the bankruptcy court for Debtors' dilatory tactics and failure "at every stage of the litigation process to provide the grounds of its entitlement to relief."

The bankruptcy court's Memorandum Decision detailed Debtor's conduct and, based on those actions, found that the Debtor intended to delay the proceedings and, in doing so, abused the bankruptcy process. We therefore find it noteworthy that Debtor began its motion for reconsideration by proclaiming that "[e]xcusable neglect may serve as the basis for relief, provided the moving party has shown diligence in seeking relief, and the opposing party has not suffered prejudice in this interim." While suggesting that the County would not be prejudiced by reconsideration, Debtor never addressed its repeated failures throughout the proceedings to exercise diligence in seeking relief.

When faced with a motion for relief from an order under Civil Rule 60(b)(1), a recent Ninth Circuit opinion notes that "[a trial] court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability." Brandt v. Am. Bankers Ins. Co., 653 F.3d 1108, 1112 (9th Cir. 2011). Here, the bankruptcy court made extensive findings concerning Debtor's culpability in failing to exercise diligence in seeking to amend its complaint. The bankruptcy court did not abuse its discretion in denying Debtor's motion for

-28-

reconsideration.[13]

## CONCLUSION

We conclude that the bankruptcy court did not err in dismissing Debtor's complaint under Civil Rule 12(b)(6) and did not abuse its discretion in denying leave to amend the complaint and reconsideration of the Dismissal Order. We therefore AFFIRM the bankruptcy court's orders.

---

[13] With its motion for reconsideration, Debtor submitted a First Amended Complaint and has suggested repeatedly in both the bankruptcy court and this appeal that by submitting the amended complaint it had satisfied the bankruptcy court's demands that it provide the grounds for its entitlement to relief. However, as the bankruptcy court properly noted, submitting the First Amended Complaint at the reconsideration stage was yet another example of the Debtor's dilatory behavior and was "too little, too late." Memorandum Decision at 2, May 7, 2013. Further, at oral argument before the Panel, counsel for Debtor conceded that, even as amended, the First Amended Complaint was still deficient in the necessary facts to support the claims.