**In re James GURGA, dba Source Communications, Debtor.**

**MCI TELECOMMUNICATIONS CORPORATION, Appellant,**

v.

**James GURGA, dba Source Communications, Appellee.**

**BAP No. NC–93–2201–MeVO. Bankruptcy No. 91–56686–ASW–CZ. Adv. No. 93–5288.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 18, 1994.

Decided Dec. 30, 1994.

Karen P. Power, Washington, DC, D. Ronald Ryland, San Francisco, CA, for appellant.

Scott L. Goodsell, San Jose, CA, for appellee.

Before MEYERS, VOLINN and OLLASON, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

MCI Telecommunications Corporation ("MCI") appeals an order of the bankruptcy court denying MCI's motions to stay an adversary proceeding pending arbitration and for relief from the automatic stay to assert a counterclaim in the arbitration proceeding.

We hold that a bankruptcy court must enforce an agreement to arbitrate a claim that is noncore. Accordingly, we **REVERSE.**

### II

### FACTS

James Gurga, dba Source Communications ("Source"), was in the business of operating a 900 telephone number service. In January, 1991, Source and MCI entered into a written agreement for MCI to provide billing and collection services for Source. A person calling one of the 900 numbers would be billed at a per-minute rate determined by Source and these charges would appear on the caller's monthly telephone bill. MCI would bill and collect the charges for the telephone calls. Under the agreement, MCI could withhold a certain percentage from billed revenues to offset uncollectible charges and was to remit the remainder to Source after deduction of its service charges.

There is a dispute between Source and MCI regarding the funds properly withheld by MCI and the amount to be remitted to Source. Section 18 of the agreement provides:

Any disputes arising in any manner under this Agreement that cannot be resolved by

negotiation between the parties shall be subject to mandatory, exclusive arbitration under the commercial arbitration rules of the American Arbitration Association. Neither party may take any other action by way of request for injunctive relief or otherwise. The order of the arbitrator may be entered in any court of competent jurisdiction.

In June, 1991, Source served a demand for arbitration of the dispute on MCI. The demand stated the nature of the dispute as breach of contract, failure or refusal to pay monies due and request for an audit and accounting. However, upon the filing of Gurga's bankruptcy petition on October 29, 1991, the American Arbitration Association closed its file on the matter.

On June 10, 1993, Gurga filed an adversary proceeding in the bankruptcy court against MCI for turnover of property, accounting, breach of contract, conversion and breach of fiduciary duty. On August 11, 1993, MCI filed a motion to stay the adversary proceeding pending arbitration and for relief from the automatic stay to assert counterclaims in the arbitration proceeding. The bankruptcy court denied the motions by order entered October 13, 1993.

MCI filed a motion for leave to appeal to this Panel. The motion was granted on November 30, 1993.

## III

### ISSUE ON APPEAL

Whether the bankruptcy court erred in refusing to enforce the arbitration clause contained in the prepetition agreement.

## IV

### STANDARD OF REVIEW

■ Because this appeal concerns issues of law only, the bankruptcy court's decision is reviewed *de novo*. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

## V

### DISCUSSION

■ The bankruptcy court denied MCI's motion to stay the adversary proceeding in favor of arbitration and stated that whether to permit dispute resolution through arbitration in the context of a bankruptcy case is a matter within the sound discretion of the bankruptcy judge. The bankruptcy court cited *In re Allen & Hein, Inc.*, 59 B.R. 733, 734 (Bankr.S.D.Cal.1986), which in turn cited *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983). However, there have been several Supreme Court nonbankruptcy cases decided subsequent to *Zimmerman* which altered the standard used in determining whether to enforce an arbitration agreement.

In 1985, the Supreme Court decided *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In that case, the Ninth Circuit had determined that whether to compel arbitration was within the court's discretion. The circuit court refused to enforce the arbitration agreement because of the court's exclusive jurisdiction over disputes concerning the Securities Exchange Act of 1934 and because it was more efficient to litigate the matter in the judicial forum rather than to bifurcate the proceeding. The Supreme Court reversed the circuit court, stating:

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

470 U.S. at 218, 105 S.Ct. at 1241.

Several months later, the Supreme Court decided *Mitsubishi Motors Corp. v. Soler*

*Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The arbitration agreement in that case arose in the international context and the underlying dispute concerned antitrust law and the Sherman Act. The Court identified an international policy in favor of arbitration and required the district court to concede jurisdiction arising under United States law to foreign arbitration. The Court divided into two parts a district court's task in determining whether to enforce an arbitration agreement. First, the district court should determine whether the parties agreed to arbitrate the dispute at issue. 473 U.S. at 626, 105 S.Ct. at 3353. Second, the court should determine whether Congress intended to preclude a waiver of the judicial remedies for the statutory rights at issue. 473 U.S. at 627–28, 105 S.Ct. at 3353–54. The Court noted, "[n]othing, in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate." *Id.* at 628, 105 S.Ct. at 3354.

In 1987, the Supreme Court decided *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), in which it enforced an arbitration clause as to claims brought under the RICO statute and the 1934 Securities Act. The *Shearson* Court stated:

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deductible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes.

482 U.S. at 226–27, 107 S.Ct. at 2337–38. (citations omitted).

More recently, the Supreme Court, applying the rule espoused in *Shearson*, held that an arbitration provision must be enforced in a case arising under the Age Discrimination in Employment Act of 1967. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

The issues decided in the cases discussed above differ somewhat from the issue before us today. The question repeatedly before the Supreme Court was whether a substantive right established by federal statute could be subject to mandatory arbitration. In contrast, this appeal concerns whether a procedural structure created by federal statute allows enforcement of mandatory arbitration provisions. Bankruptcy is basically a procedural forum designed to provide a collective proceeding for the sorting out of non-bankruptcy entitlements. *In re Worcester*, 811 F.2d 1224, 1228 (9th Cir.1987). It is not the right to bankruptcy, to discharge or to any substantive right created in the Bankruptcy Code that would be arbitrated. Instead, the right to have a contract claim decided in the bankruptcy court is at issue.

Despite Source's attempts to frame the issues herein as core, we find that the claims are noncore. It is undisputed that the underlying action is a breach of contract action. The adversary proceeding filed by Source entitled "Complaint for turnover of property, accounting, breach of contract, conversion, and breach of fiduciary duty," includes claims for relief for only one potential core issue—turnover of property pursuant to 11 U.S.C. § 542(b). However, turnover proceedings involve return of *undisputed* funds. *In re P & G Drywall and Acoustical Corp.*, 156 B.R. 704, 706 (Bankr.D.Me.1993). Here, the amounts, if any, owed to Source by MCI are in dispute and this dispute rests on breach of contract issues. In fact, Source made a prepetition demand for arbitration of the dispute, described at that time as breach of contract and accounting causes of action. Breach of contract actions are noncore claims. *See* 28 U.S.C. § 157.

The issue we must address therefore becomes: Did Congress intend to make an exception to the Arbitration Act for noncore proceedings in bankruptcy cases? To answer the question it is appropriate for the court (1) to look to the text and legislative

history of the Bankruptcy Code for such congressional intent and (2) to determine if there is an inherent conflict, such that arbitration cannot provide the parties the statutory rights and protections afforded under the Bankruptcy Code.

In *Mor-Ben Ins. Markets Corp.*, 73 B.R. 644 (9th Cir. BAP 1987), the Panel affirmed the bankruptcy court's orders to arbitrate various noncore contract actions between the debtor in possession and several insurance companies. The Panel held that:

> Neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from determining whether the insurers' claims are valid or whether any party has broken the contract. Thus, the fact that these issues arise in the context of a bankruptcy does not invalidate the agreement of the parties to have the dispute heard by an arbitrator in London.

73 B.R. at 648. And in *In re Morgan*, 28 B.R. 3, 5 (9th Cir. BAP 1983), the Panel reversed the bankruptcy court's decision not to honor a contractual arbitration provision, stating:

> There is no competing bankruptcy policy where the trustee or debtor in possession brings suit against a party who has made no claim against the estate. Even if the defendant has made a claim against the estate, it may be appropriate to enforce a contract to arbitrate.

*See also Hays and Co. v. Merrill Lynch*, 885 F.2d 1149 (3d Cir.1989) (reversing the district court's denial of a motion to compel arbitration, finding no congressional intent to exclude arbitration in noncore adversary proceedings to enforce a claim of the estate).

■■■ These cases are well grounded. The 1984 BAFJA Amendments confer on the district court original, but not exclusive, jurisdiction over noncore matters. 28 U.S.C. § 1334(b). "Thus, it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court." *Hays, supra*, 885 F.2d at 1157. We are mindful of the goal of the Arbitration Act to ensure judicial enforcement of privately made arbitration agreements, *Moses H. Cone Memorial Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and that "arbitration is a form of dispute resolution that finds favor in the courts." *Graham Oil Co. v. ARCO Products, Inc.*, 43 F.3d 1244 (9th Cir.1994).

Here, Source agreed to mandatory, exclusive arbitration of any claims arising from its contract with MCI. There is nothing either explicit or inherent in the Bankruptcy Code excusing Source from arbitration of these noncore claims.

## VI

## CONCLUSION

For the forgoing reasons, the bankruptcy court's decision is **REVERSED**.