In re SLIPPED DISC INC., dba
Disc Go Round, Debtor.

Slipped Disc Inc., dba Disc
Go Round, Plaintiff,

v.

CD Warehouse Inc., Defendant.

Bankruptcy No. 98–02914–C.
Adversary No. 99–9212–C.

United States Bankruptcy Court,
N.D. Iowa.

Feb. 14, 2000.

## ORDER RE DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on February 9, 2000 on Defendant CD Warehouse, Inc.'s Motion to Stay Proceedings and Compel Arbitration. Plaintiff/Debtor Slipped Disc, Inc. was represented by Attorney Lew Eells. Creditor/Defendant CD Warehouse, Inc. was represented by Attorney Joseph E. Schmall. After oral argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution.

### STATEMENT OF THE CASE

Debtor initiated an adversary proceeding to recover a claim for breach of contract against Defendant. Specifically, Debtor alleges that Defendant violated the terms of an exclusive franchise agreement. Debtor argues that this is a core proceeding under 28 U.S.C. § 157(b)(2)(C) and as such is not suitable for arbitration.

Defendant has filed a Motion to Stay Proceedings and Compel Arbitration, arguing that any controversy or claim arising out of or relating to the franchise contract must be settled by arbitration pursuant to the terms of the contract. (Pl.s' Ex. BB

Sec. 18.10.) Defendant argues that the strong federal policy favoring arbitration does not conflict with the policies of the Bankruptcy Code, and that the arbitration agreement should be enforced.

## FINDINGS OF FACT

Debtor originally entered into a franchise agreement with CDX Audio Development Inc. to operate a retail compact disc store called CD Exchange. (Pl.'s Compl. ¶ 2.) Over time, CDX was purchased by Grow Biz International (GBI) which changed the franchise name from CD Exchange to Disc Go Round. (Pl.'s Compl. ¶ 19.) Defendant eventually purchased all Disc Go Round franchises from GBI, including Debtor's Disc Go Round franchise. (Def.'s Mem. in Supp. of Mot. at 3.)

Debtor enjoyed exclusive franchise rights under its original agreement with CDX Audio Development. (Pl.'s Ex. BB at Ex. A to Franchise Agreement.) According to Debtor, Defendant violated these rights when, after assuming the contractual responsibilities contained in the franchise agreements, it granted a Defendant franchise to Music Broker, Ltd. within Debtor's exclusive franchise territory.

The contract granting Debtor these exclusive franchise rights also contained an arbitration clause which provided that any claim or controversy arising out of or relating to the franchise agreement would be resolved through arbitration, and that arbitration was the sole and exclusive procedure for dispute resolution. (Pl.'s Ex. BB Sec. 18.12)

## ARBITRATION

■ The arbitrability of contracts involving interstate commerce is governed by federal law rather than state law. *Lee v. Chica*, 983 F.2d 883, 886 (8th Cir.1993). Contracts containing written arbitration agreements are governed by the Federal Arbitration Act, which provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revoca-

tion of any contract." 9 U.S.C. § 2. The Act further provides that federal courts faced with an issue referable to arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has interpreted this language as mandatory, absent a showing by the party opposing arbitration that a waiver of judicial remedies would inherently conflict with the underlying purposes of some other statute, such as the Bankruptcy Code. *Shearson/American Exp. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 483, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Several policies of the Bankruptcy Code conflict with the strong federal policy favoring arbitration. One is the principle favoring resolution of bankruptcy claims in one single forum. *In re Trident Shipworks, Inc.*, 243 B.R. 130, 132 (Bankr. M.D.Fla.1999). Discouraging proliferation of litigation in non-bankruptcy forums encourages expeditious administration of the estate for the benefit of all parties involved. *In re Knepp*, 229 B.R. 821, 844–45 (Bankr.N.D.Ala.1999). Additionally, the costs of arbitration might negatively affect the administration of the estate since monies used to pay for arbitration will mean less money to fund the plan and pay creditors. *Id.* at 843, 845.

■ If conflicts exist between the Bankruptcy Code and the Federal Arbitration Act, mandatory enforcement of arbitration agreements becomes discretionary in bankruptcy. *See Id.* at 845; *In re Chas. P. Young Co.*, 111 B.R. 410, 416–17 (Bankr.S.D.N.Y.1990); *Trident Shipworks*, 243 B.R. at 134. A bankruptcy court must weigh the competing policies of each statute in order to determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause. *Hays and*

*Co. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir. 1989). If not, the arbitration clause should be enforced. *Id.*

## DISTINGUISHING "CORE" FROM "NON–CORE" PROCEEDINGS

■ Enforcement of arbitration clauses is appropriate in disputes involving non-core bankruptcy issues, since such proceedings do not significantly implicate the provisions and policies of the Bankruptcy Code. *In re Pisgah Contractors, Inc.,* 215 B.R. 679, 684 (W.D.N.C.1995). Debtor argues that the present adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C) because it constitutes a counterclaim by the estate against a creditor. Debtor further argues that this fact mitigates against enforcement of the arbitration clause.

■ While the present adversary proceeding is indeed a core proceeding under § 157(b)(2)(C), it is not a core proceeding in the same manner as that term is used in cases dealing with enforcement of arbitration clauses. A distinction exists between core proceedings as defined in § 157 and core proceedings as defined in case law dealing with the enforcement of arbitration clauses. Where the issues to be arbitrated do not implicate the right to bankruptcy, the right to a discharge, or some other substantive right created in the Bankruptcy Code, the issues are non-core and suitable for arbitration, even if they arise in a § 157(b) core proceeding. *See In re Gurga,* 176 B.R. 196, 196, 199 (9th Cir. BAP 1994). Conversely, where the issues to be arbitrated involve exclusively bankruptcy matters, such as the determination of claim priority, such issues should not be submitted to arbitration because they are core bankruptcy matters. *In re Guild Music Corp.,* 100 B.R. 624, 628 (Bankr. D.R.I.1989). Actions involving issues that "[do] not implicate the provisions and policies of the Code to such an extent that arbitration would interfere with the same," such as breach of contract actions, are non-core proceedings suitable for arbitration. *Pisgah Contractors, Inc.,* 215 B.R. at 684. The Eighth Circuit's definitions of core and non-core proceedings outside of the arbitration context are in agreement with this analysis. A core proceeding is one which arises only in bankruptcy or involves a right created by federal bankruptcy law. *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir.1995). A non-core proceeding is one that could exist outside of bankruptcy, although it may be related to a bankruptcy. *Id.* at 773–74. Debtor's adversary proceeding against Defendant could exist independently of this bankruptcy proceeding.

■ Close reading of a case relied upon by Debtor in its Memorandum of Points and Authorities reveals the core versus non-core distinction in the arbitration context. In *Gurga,* as in the present case, the debtor initiated an adversary proceeding against a creditor for breach of contract. *Gurga,* 176 B.R. at 196. That action was a core proceeding as defined by 28 U.S.C. § 157(b)(2)(C) (counterclaim by the estate against a creditor), yet the Bankruptcy Appellate Panel held that the underlying breach of contract action was actually non-core for purposes of resolving the arbitration issue. *Id.* at 199. Citing *Hays and Co.,* the court ordered arbitration, concluding that nothing inherent in the Bankruptcy Code excluded breach of contract claims from arbitration. *Id.* at 200; *See also In re Chorus Data Systems,* 122 B.R. 845, 854 (Bankr.D.N.H.1990) (granting creditor relief from automatic stay to compel arbitration of breach of contract claim brought by debtor). Because Debtor's claim against Defendant arises out of a franchise contract and does not implicate substantive rights created exclusively by federal bankruptcy law, this is a proceeding suitable for arbitration. *Id.; Guild Music Corp.,* 100 B.R. at 628; *Gurga,* 176 B.R. at 199.

## COURT'S DISCRETION TO COMPEL ARBITRATION

■ Four factors are considered when deciding whether to compel arbitra-

tion: (1) Whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration process; (2) Whether or not special expertise is necessary in deciding the issue; (3) The impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause; (4) Whether arbitration threatens assets of the estate. *Chas P. Young Co.*, 111 B.R. at 417. Because Debtor opposes lifting the automatic stay in order for arbitration to proceed, it bears the burden of showing why arbitration should not be granted. 11 U.S.C. § 362(g); *See Chorus Data Systems*, 122 B.R. at 852.

Beyond its argument that the present adversary proceeding is actually a core proceeding under 28 U.S.C. § 157(b)(2)(C), Debtor offers few reasons in support of its contention that "A bankruptcy judge in Iowa is preferable to decide Plaintiff's counterclaims to the claims of Defendant, Inc. than an arbitrator in Wisconsin as stated in the franchise agreement." (Pl.'s Mem. at 6). At oral argument, Debtor appealed to the equitable powers of the bankruptcy court, arguing that fairness called for resolution of Debtor's claims in the bankruptcy forum. Debtor also noted that the costs of arbitration may ultimately be born by the debtor's estate.

Fairness, like beauty, is often in the eye of the beholder. Denying enforcement of a freely bargained-for arbitration clause may be considered equally unfair to Defendant. As the parties noted, litigating the breach of contract issue in bankruptcy could lead to an award of punitive damages, providing Debtor with a right not allowed under the arbitration agreement and negotiated away when the contract was executed. The result is that failure to enforce arbitration changes the terms of the contract. The Eighth Circuit has rejected fairness arguments when passing upon the enforceability of arbitration clauses. *See, e.g., Matter of Hart Ski Mfg. Co., Inc.*, 22 B.R. 763, 765 (D.Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir.1983) (enforc-

ing arbitration clause; rejecting argument that doing so could result in financial disadvantage or inconvenience to the debtor). Finally, while a bifurcation of proceedings may or may not be less efficient, this argument cannot overcome the strong policy favoring arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

## SUMMARY AND CONCLUSION

The Supreme Court has made clear that federal policy under the Federal Arbitration Act mandates enforcement of valid private arbitration agreements. Only when allowing arbitration would undermine an inherent policy of the Bankruptcy Code should arbitration agreements be set aside. Bankruptcy courts have widely endorsed this principle.

When exercising discretion in enforcing arbitration agreements, the trend is to compel arbitration in non-core matters. The distinction between core and non-core matters in the arbitration context is different than in the context of 28 U.S.C. § 157(b). In the arbitration context, non-core matters are those that do not involve issues of law unique to bankruptcy or substantive rights created exclusively by the Bankruptcy Code.

The present adversary proceeding does not implicate any substantive bankruptcy rights; it is a breach of contract action. Such matters can be handled competently by arbitrators. Enforcing pre-petition arbitration agreements with respect to non-core matters gives effect to the policies of the Arbitration Act without significantly undermining those of the Bankruptcy Code.

**WHEREFORE,** Defendant's Motion to Stay Proceedings and Compel Arbitration is GRANTED.

**FURTHER,** the parties shall submit a joint status report concerning the arbitra-

tion proceedings not later than May 31, 2000.