**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HELLER EHRMAN LLP,<br>    Debtor. | BAP No. NC-24-1156-BCF<br><br>Bk. No. 08-32514 |
| MICHAEL F. BURKART, Chapter 11 Plan Administrator for Heller Ehrman LLP,<br>    Appellant,<br>v.<br>JOHN ROBERTSON; MARK MEDEARIS; MARK WINDFELD-HANSEN; VLG INVESTMENTS, LLC, a Delaware limited liability company; VLG INVESTMENTS 2006, LLC, a Delaware limited liability company; VLG INVESTMENTS 2007, LLC, a Delaware limited liability company; VLG INVESTMENTS 2008, LLC, a Delaware limited liability company,<br>    Appellees. | Adv. No. 23-03036<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and FARIS, Bankruptcy Judges.

---

  * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

# INTRODUCTION

Appellant Michael Burkhart, the chapter 11[1] plan administrator ("Plan Administrator") for debtor Heller Ehrman LLP ("Heller"), appeals orders dismissing his original and first amended complaints. His primary claim was that the Heller estate was entitled to more than it received from the sale of some stock interests in 2021. The bankruptcy court determined that the Plan Administrator failed to plead a plausible claim for any additional proceeds from the stock sale. Seeing no reversible error, we AFFIRM.

# FACTS

## A.    Background

In 2003, Venture Law Group ("Venture Law") was a Silicon Valley-based law firm specializing in representing start-up technology and biotechnology companies. Eligible attorneys and staff at Venture Law personally invested in the firm's clients. These individual investments were made into separate LLCs, including VLG Investments, LLC ("VLGI"), which, in turn, invested in and held common and preferred stock in clients of Venture Law. From 1999 to 2003, Venture Law itself was an investor in the preferred stock investments of VLGI. Only Venture Law partners were eligible to invest in any common stock.

VLGI placed its investments into separate "subfunds" for each year,

___

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

which existed under the umbrella of VLGI – e.g., 1999 subfund, 2000 subfund, and so on. Each "subfund" was governed by a separate "appendix" attached to VLGI's operating agreement. Starting in 2006, instead of creating a new subfund for each year, new limited liability companies were organized to hold the investments for each of the respective years: VLGI Investments 2006, LLC ("VLGI 2006"), VLGI Investments 2007, LLC ("VLGI 2007"), and VLGI Investments 2008, LLC ("VLGI 2008") (together with VLGI, the "Funds").

In 2003, Venture Law merged with Heller. Unlike Venture Law, Heller itself did not invest in the Funds, but Heller did inherit Venture Law's existing interests in VLGI's subfunds from 1999 through 2003. Prior to the merger, Venture Law was the manager of VLGI but delegated management duties to three Venture Law partners as a "board of managers." Following the merger, Heller became the manager and continued the practice of delegating management duties to the board of managers – defendants John Robertson, Mark Medearis, and Mark Windfeld-Hanson (the "Fund Managers," together with VLGI, VLGI 2006, VLGI 2007, and VLGI 2008, the "Defendants"). In October 2008, Heller was removed as manager due to the bankruptcy filing. Heller was also a member of the Funds until 2008, except for the 2004 and 2005 subfunds.

In fall 2008, Heller voted to dissolve and wind-up its business, and shortly thereafter, on December 28, 2008, filed a chapter 11 bankruptcy case. In 2010, the bankruptcy court confirmed a plan of liquidation, under which the Plan Administrator was appointed.

3

In 2010, the court approved settlement agreements and mutual general releases between Heller and many of its former shareholders, including the Fund Managers (the "2010 Releases"). The 2010 Releases released the former shareholders from "Estate Claims," which included "any claim . . . (v) arising out of Settling Shareholder's service or status as an officer, director, manager, shareholder, partner, member or employee of any of Heller Ehrman LLP or the Heller Affiliates, as a member of any committee of any of them[.]"

**B.** **SpaceX stock sale, Plan Administrator's original complaint, and motion to dismiss**

### 1. The stock sale

While the majority of VLGI's start-up investments were unsuccessful, one notable success was Space Exploration Technologies Corp., better known as SpaceX. At the time of SpaceX's founding in 2002, VLGI acquired 35,000 shares of its common stock and 35,000 shares of its preferred stock. In 2021, VLGI sold its SpaceX stock at a substantial profit for the 2002 subfund investors. The common and preferred stock sold at the same price per share. VLGI distributed the sale proceeds to the 2002 subfund members, which included a large payout to Heller's estate based on its interest in SpaceX's preferred stock.

### 2. The original complaint

After conducting extensive discovery by way of Rule 2004 exams,[2] the

---

[2] In 2023, the Plan Administrator conducted Rule 2004 exams relating to the Funds where Defendants produced thousands of pages of documents.

Plan Administrator filed his original complaint alleging seven causes of action against Defendants: turnover under § 542(a); breach of fiduciary duty; fraudulent concealment; intentional and negligent misrepresentation; conversion; and unjust enrichment. The gist of the complaint was that the Heller estate did not receive all that it should have received from the Funds and specifically with respect to the SpaceX distribution, and that the Fund Managers engaged in actionable conduct to deprive the Heller estate of distributions from the Funds.

The complaint alleged that, shortly before Heller's bankruptcy filing in 2008, the Fund Managers recognized that the VLGI stock investments might be considered assets of the estate and took steps to conceal any interest the estate had in those investments. To demonstrate misconduct by Defendants, the Plan Administrator pointed to emails among the Fund Managers, and the "Master Amendment Agreement Among Funds" ("MAAAF"), which amended each of the Funds' operating agreements and removed Heller as manager just before the bankruptcy filing without Heller's approval or signature. The Plan Administrator alleged that Heller's removal as manager of the Funds negatively impacted its rights.

The Plan Administrator further alleged that, by 2019, VLGI and the Fund Managers knew that the SpaceX stock had significant value. At that time, he alleged, there was uncertainty as to what percentage of the 2002 subfund was owned by Heller, and the Fund Managers discussed whether to "erase" Heller's interest or "transfer" it to one of the other VLGI subfunds. The

Plan Administrator alleged that, in December 2020, with knowledge of the substantial value of the SpaceX stock, Robertson, as manager of the Funds and a fiduciary to the Funds and to Heller, unsuccessfully attempted to purchase Heller's interests in the Funds from the estate for a de minimis amount, without disclosing to the Plan Administrator the stock's substantial value. The Plan Administrator inferred that Robertson's timing was suspect, given that VLGI soon thereafter sold the SpaceX stock at a significant profit.

The SpaceX stock sale closed in April 2021, and the proceeds were distributed to members of the 2002 subfund. The Plan Administrator alleged that, before the distribution, VLGI ran a distribution calculation whereby Heller was to receive amounts based on the sale of both common and preferred stock in SpaceX. But later, he alleged, Robertson instructed VLGI to rerun the calculation to provide for a distribution based only on the sale of preferred stock. Robertson maintained this distribution was consistent with the appendix to the 2002 subfund operating agreement (the "2002 Subfund Appendix"), which stated in Section 4(a)(iv)(A)(II) that the "Common Interest of VLG (i.e., Heller) is zero." However, alleged the Plan Administrator, the revised distribution decision was based on an unsigned and incomplete version of the 2002 Subfund Appendix. Further, Robertson repeatedly represented that Heller had only a preferred stock interest and that the distribution to Heller was correct, knowing that he and VLGI did not have a fully executed or complete 2002 Subfund Appendix.

After the SpaceX distribution, alleged the Plan Administrator, VLGI

6

and the Fund Managers realized that they might have incorrectly determined the distribution of the SpaceX stock sale proceeds to Heller and that it might have been inconsistent with VLGI's prior distributions.

In mid-2022, VLGI and the Fund Managers located a signed version of the 2002 Subfund Appendix, but it was missing Venture Law's signature and the required schedules. The Plan Administrator alleged that VLGI and the Fund Managers knew that the lack of schedules was problematic, and so they pulled them from other files to attach to the 2002 Subfund Appendix after the fact. They also knew, he alleged, that the signed version with the cobbled-together schedules might raise suspicion from the Plan Administrator, and they considered not providing it to him.

As for defendants VLGI 2006, VLGI 2007, and VLGI 2008, the Plan Administrator alleged that Heller was a member and manager of these funds. However, VLGI and the Fund Managers represented that Heller's estate had no interest in these funds, no distributions had been made to Heller during the bankruptcy, and they never disclosed the terms of any fully executed operating agreements or whether such documents existed. Thus, he continued, it was "unclear" as to what Heller's ownership interest was in VLGI 2006, VLGI 2007, and VLGI 2008 and whether any amounts were owed.

### 3. Motion to dismiss original complaint

Defendants moved to dismiss the original complaint, arguing: (1) the § 542 turnover claim failed because title to the assets to be turned over was disputed; (2) the remaining six claims failed to plausibly state a claim for

7

relief, and they, along with the turnover claim, were time-barred; and (3) any claims against the Fund Managers were released by the estate in the 2010 Releases ("Motion to Dismiss"). In support, Defendants requested that the court take judicial notice of various documents, including the signed 2002 Subfund Appendix and the 2010 Releases.

Defendants argued that turnover under § 542 could not be used to demand assets whose title is in dispute. Not only did the complaint fail to allege that the estate's entitlement to the Funds and the SpaceX common stock sale proceeds was undisputed, but the complaint made clear that Defendants believed that the Funds were not estate assets (other than the pre-merger interest Heller inherited from Venture Law), and that the estate had no right to the SpaceX common stock investment.

As for the remaining six claims, Defendants argued that the complaint failed to plead facts to support that they engaged in wrongdoing or that Heller was injured. Defendants argued that the fiduciary duty claim failed because the complaint did not allege that Defendants departed from the procedures for making distributions or violated the express terms of the 2002 Subfund Appendix. Although the Plan Administrator made much ado about the signed version of the 2002 Subfund Appendix being found after the SpaceX distribution, it was identical to the unsigned version relied on to make the distribution, which explicitly stated that the "Common Interest of [Heller] will equal zero." Likewise, argued Defendants, the fraudulent concealment and misrepresentation claims failed because the Plan

8

Administrator did not allege that he relied upon or was damaged by any of the alleged omissions or misrepresentations. Because the remaining claims for conversion and unjust enrichment hinged on the failed breach of fiduciary duty and fraudulent concealment claims, argued Defendants, they should also be dismissed. Both claims relied on the erroneous assumption that VLGI or the Fund Managers improperly took or withheld funds from Heller.

As for Robertson's offer to purchase Heller's interest in the Funds from the estate, Defendants argued that the Plan Administrator never ended up selling that interest for the alleged "de minimis" amount or otherwise. The complaint also failed to allege that Robertson ever stated a price for it, much less a misleading or fraudulent price. Defendants argued that this was because he never offered the Plan Administrator a price; he merely offered the estate an opportunity to sell its interest if it was so inclined.

Defendants argued that even if the claims against the Fund Managers were timely, they were released under the "extremely broad" 2010 Releases, which covered any claims against them arising out of their service as managers of the Funds for Heller. Defendants argued that the 2010 Releases were prospective and included any claims that the Fund Managers took actions to create the impression that the Funds and their assets were not property of Heller's estate, or that they converted them.

Lastly, Defendants argued that the Plan Administrator pled no claims against VLGI 2006, VLGI 2007, and VLGI 2008. The complaint failed to allege that Heller had an economic interest in these funds or that it was entitled to

9

any distribution from them. The complaint also failed to allege that Heller suffered damages when it was removed as manager of these funds in 2008 by the MAAAF.[3]

### 4. Opposition to Motion to Dismiss

In opposition, the Plan Administrator argued that he plausibly alleged claims for breach of fiduciary duty, concealment, and misrepresentation by alleging: (1) Defendants tried to create the impression that the Funds and their assets were not estate property; (2) Defendants denied that Heller was a member of VLGI 2006, VLGI 2007, and VLGI 2008 and refused to produce signed versions of their operating agreements, while the unsigned and incomplete versions reflected that Heller was a member, and it received no distributions from these funds; (3) Robertson suggested that VLGI "erase" Heller's ownership because Heller was "dead and gone" and tried to purchase the estate's interest for a de minimis amount, while he and VLGI knew of the assets' significant value; (4) VLGI distributed the SpaceX stock sale proceeds based on the unsigned and incomplete 2002 Subfund Appendix, and the signed version located later was incomplete and cobbled together after-the-fact; and (5) when the Plan Administrator inquired as to how VLGI calculated the distribution to Heller, VLGI and the Fund Managers provided incomplete and inaccurate information, concealing and omitting material information and documents. The Plan Administrator argued that the complaint also

---

[3] The MAAAF did not alter Heller's status as a member of, or its economic interests in, the Funds.

plausibly alleged claims for turnover, conversion, and unjust enrichment.

Finally, the Plan Administrator argued that the court could not consider the 2010 Releases because they were not attached to or referenced in the complaint and were not central to his claims. Alternatively, he argued that the 2010 Releases did not cover the Fund Managers' acts and omissions done for their own self-interest to the detriment of Heller. In addition, the settlement which gave rise to the 2010 Releases was for Heller's overpayment of compensation to the settling shareholders for 2007-2008, not for turnover or any fraud-based or misrepresentation claims.

### 5.    Ruling on Motion to Dismiss

The bankruptcy court granted the Motion to Dismiss with leave to amend only as to VLGI and the Fund Managers, and only as to the discrete events occurring during or after 2021 as they related to the claims for breach of fiduciary duty, fraudulent concealment, negligent and intentional misrepresentation, conversion, and unjust enrichment. The court took judicial notice of the 2010 Releases and determined that the Fund Managers were released from the Plan Administrator's claims relating to conduct pre-2010. Consequently, the claims against them were dismissed without leave to amend any cause of action based on their conduct prior to 2010, including the removal of Heller as manager of the Funds in 2008. The court also determined that the Plan Administrator failed to state a claim for turnover, which was a remedy to recover undisputed estate assets.

The court determined that the Plan Administrator failed to state any

11

claim against VLGI 2006, VLGI 2007, and VLGI 2008. With the turnover claim dismissed, the only claims remaining against these defendants were for conversion and unjust enrichment. The court found that the complaint alleged only the improper removal of Heller as manager of these funds in 2008 (for which any remedy was time-barred), and a bare statement that these defendants were "related entities" with VLGI, meaning all acts of VLGI should also be attributed to them. The complaint alleged no facts that the separate entities of VLGI 2006, VLGI 2007, and VLGI 2008 were part of the alleged concealment or conversion of SpaceX funds. The complaint also failed to plead that there was any distribution from these funds that was not made to Heller due to its removal as manager, or facts implicating these defendants in a conversion scheme or that they were recipients of the SpaceX distribution or any other unjust enrichment. Instead, noted the court, the complaint merely alleged that Heller had not received any distributions from these funds and that the terms of the fully executed operating agreement had not been disclosed, and so it was "unclear" as to what Heller's ownership interest was and whether any amounts were owed. The court found that these grievances amounted to a "discovery dispute" and speculation about what might be established through further discovery.

C.    **First amended complaint and motion to dismiss**

1.    **First amended complaint**

The Plan Administrator's first amended complaint ("FAC") alleged the same causes of action against VLGI and the Fund Managers, minus the

12

turnover claim, and added new claims for accounting and declaratory relief. The allegations in the FAC largely tracked those in the original complaint, but the FAC added some new facts regarding the 2002 subfund's distribution of the SpaceX proceeds to Heller.

The Plan Administrator alleged that Heller had previously received distributions from the 2002 subfund based on both common and preferred stock and that VLGI had made distributions to Heller with percentages that differed from the one used in 2021. Precisely, he alleged that, in August and December 2006, the 2002 subfund made distributions to Heller based on an interest in both common and preferred stock resulting in Heller receiving 17.087% of the total distribution in each instance, which was different from the percentage VLGI applied based on the 2002 Subfund Appendix in 2021.

The Plan Administrator alleged that VLGI and the Fund Managers knew or should have known that the 2002 subfund had previously made distributions to Heller based on both common and preferred stock and that VLGI did not historically differentiate between the stock types in prior distributions. The Plan Administrator alleged that, despite this, VLGI distributed the SpaceX proceeds to Heller based on the sale of preferred stock only, and it did so by relying upon the unsigned and incomplete 2002 Subfund Appendix. In addition, Robertson repeatedly represented that Heller had only a preferred stock interest and that the 2021 distribution was correct, knowing the contrary prior distribution history and that VLGI was relying on unsigned and incomplete documents for that distribution. Later, once the

13

signed but still incomplete 2002 Subfund Appendix was found, VLGI and the Fund Managers cobbled together its missing schedules and continued to represent that the document controlled.

## 2. Motion to Dismiss the FAC

VLGI and the Fund Managers moved to dismiss the FAC, arguing that the Plan Administrator still failed to plausibly allege that the 2021 SpaceX distribution was incorrect. The only new substantive allegation was that it was inconsistent with two distributions made in 2006. However, they argued, merely alleging that the 2002 subfund made two distributions 15 years earlier that included amounts based on the sale of both common and preferred stock as "inconsistent" with the 2021 distribution did not plausibly establish that the 2021 distribution was incorrect. All it established, they argued, was that the 2006 distribution was an error and violated the 2002 Subfund Appendix's explicit language. In addition, although the Plan Administrator claimed that the 17.087% distribution Heller received in 2006 was "inconsistent" with what it received in 2021, Heller actually received a greater percentage of the distribution in 2021 (17.828%).

Other than referencing these 2006 distributions, argued VLGI and the Fund Managers, the Plan Administrator provided no facts supporting that they were made correctly. While he tried to cast doubt as to whether the unsigned 2002 Subfund Appendix was the correct and operative version by alleging "infirmities" in the document and inconsistencies in distributions, every version of the 2002 Subfund Appendix in existence said the same thing:

14

Heller had no interest in the common stock of the 2002 subfund. VLGI and the Fund Managers argued that the Plan Administrator offered no plausible reason, only speculation, to believe that there existed some undiscovered document giving Heller such an interest.

### 3. Opposition to Motion to Dismiss the FAC

Although VLGI and the Fund Managers maintained that they could not deviate from the distribution method and percentages in the "cobbled-together" 2002 Subfund Appendix, the Plan Administrator argued that the FAC alleged that past distribution methods by VLGI differed significantly from the method used in 2021. Therefore, the FAC plausibly pleaded that Heller did not receive all that it was entitled to from the 2021 distribution.

The Plan Administrator objected to VLGI and the Fund Managers' request for judicial notice of the signed 2002 Subfund Appendix, which he argued suffered from several infirmities. First, it included signature pages from the Second Amended and Restated Limited Liability Company Agreement, rather than the Third Amended and Restated Limited Liability Company Agreement that the 2002 Subfund Appendix was attached to. Second, the VLGI members participating in the 2002 subfund listed in Schedule A did not all match with the attached member signature pages. Finally, as previously noted, the schedules being offered were not included in this later-located 2002 Subfund Appendix but were pulled from different documents in different locations. The Plan Administrator argued that more discovery was needed to further probe prior distributions, and to determine

15

whether a complete or operative 2002 Subfund Appendix or other agreement existed and what the terms were of any such agreement.

**4.     Ruling on Motion to Dismiss the FAC**

The bankruptcy court granted the Motion to Dismiss the FAC without leave to amend and dismissed it with prejudice. In short, it determined that the FAC failed to plead a plausible claim under Civil Rule 12(b)(6) standards and that any amendment was futile.

The court determined that the claims for fraudulent concealment, negligent and intentional misrepresentation, and unjust enrichment rose and fell together because they were based on the same factual allegations. The court reasoned that there were two possible explanations for the difference in the 2006 and 2021 distributions, but only one resulting in liability (i.e., if the 2021 distribution was done incorrectly). Citing *In re Century Aluminum Company Securities Litigation*, 729 F.3d 1104 (9th Cir. 2013), the court determined that the facts the Plan Administrator alleged for an alternative to the 2002 Subfund Appendix's explicit language were merely conjecture, and thus nothing more than a "mere possibility" that there was an explanation to contradict the recital that the "[c]ommon interest of [Heller] will equal zero." Put differently, the "possibility" that the distribution method used in 2006 was correct did not equate to "plausibility" that the 2021 distribution method was incorrect, in the absence of "facts tending to exclude the possibility" that the 2021 distribution was done in accordance with the 2002 Subfund Appendix. The court also determined that the conversion claim failed since

no property interest of Heller was converted, and the accounting and declaratory relief claims sought the same possible, but not plausible, outcome.

This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court err in granting the Motion to Dismiss the FAC?

2.   Did the bankruptcy court err in considering the 2002 Subfund Appendix in granting the Motion to Dismiss the FAC?

3.  Did the bankruptcy court err in dismissing certain claims in the original complaint without leave to amend?

4.  Did the bankruptcy court abuse its discretion in denying leave to amend the FAC?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. *See Freeman v. DirecTV, Inc.,* 457 F.3d 1001, 1004 (9th Cir. 2006); *Barnes v. Belice (In re Belice),* 461 B.R. 564, 572 (9th Cir. BAP 2011). For de novo review, we look at the matter anew as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. *Freeman,* 457 F.3d at 1004.

17

We review the bankruptcy court's dismissal of a complaint without leave to amend for abuse of discretion. *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.    Standards for dismissal under Civil Rule 12(b)(6)

Under Civil Rule 12(b)(6), applicable here by Rule 7012, a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion under Civil Rule 12(b)(6), a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). Dismissal is proper where there is no cognizable legal theory or the plaintiff has failed to allege sufficient facts to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Under Civil Rule 12(b)(6), the plaintiff must allege in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

18

*Id.* (citing *Twombly,* 550 U.S. at 556). The plausibility standard seeks more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556).

Although the focus is on the complaint, we may consider the existence and content of documents attached to and referenced in the complaint as exhibits. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003); *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987) (noting that documents attached to the complaint may be considered in determining whether the plaintiff can prove any set of facts in support of the claim). Even when a document is not attached to the complaint, we may consider its existence and content when its authenticity is not contested and the plaintiff either refers extensively to the document or the document forms the basis of the plaintiff's claim. *Ritchie,* 342 F.3d at 908. The defendant may offer such a document, which we may treat as part of the complaint and assume that its contents are true for purposes of a motion to dismiss under Civil Rule 12(b)(6). *Id.* (discussing the doctrine of "incorporation by reference").

**B.**   **The bankruptcy court did not err in granting the Motion to Dismiss the FAC.**

As a threshold matter, the Plan Administrator argues that the bankruptcy court improperly took judicial notice of the 2002 Subfund Appendix in deciding to grant the Motion to Dismiss the FAC without leave to amend and dismiss the FAC with prejudice. Specifically, he argues that the court erred in considering and interpreting the 2002 Subfund Appendix

though its authenticity was disputed, and then determining that allegations contradicting the document were not plausible. His arguments lack merit.

Nothing in the bankruptcy court's decision indicates that it took "judicial notice" of the 2002 Subfund Appendix. The Plan Administrator attached copies of both the signed and unsigned versions of the 2002 Subfund Appendix to the original complaint. He did not attach copies of either version to the FAC, but the substance of the document was extensively referenced in the FAC in the many "quoted" email communications between the Fund Managers discussing its express terms and their reliance on those terms for the 2021 SpaceX distribution. Although Defendants, and later VLGI and the Fund Managers, attached a copy of the 2002 Subfund Appendix to their motions to dismiss and asked the court to take judicial notice of it, that was not necessary in order for the court to consider it. *Ritchie,* 342 F.3d at 908.

Nonetheless, the Plan Administrator argues that the court could not consider the 2002 Subfund Appendix because its authenticity was disputed. He has argued that the version of the 2002 Subfund Appendix relied upon by VLGI and the Fund Managers to make the 2021 SpaceX distribution was unsigned and incomplete, and that the later-discovered signed version was missing some signatures and schedules, which the Fund Managers cobbled together and attached and failed to disclose that fact. However, these arguments go to the documents' legal effectiveness, not their "authenticity."

The Plan Administrator has not argued that the unsigned or incomplete versions of the 2002 Subfund Appendix that were produced are not what

20

they purport to be – i.e., unsigned or incomplete versions of the 2002 Subfund Appendix. In fact, nowhere in his pleadings did he even use the word "authenticity." Rather, his argument is that, because these copies were unsigned or incomplete, we cannot be sure that they reflect the legally operative version of the 2002 Subfund Appendix. Further, the alleged "infirmities" he complained of – the missing signatures or schedules – had no bearing on the relevant and unrefuted language in the body of the document, that Heller had zero interest in the 2002 subfund common stock. Accordingly, the bankruptcy court did not err by considering the 2002 Subfund Appendix.

The Plan Administrator next argues that the bankruptcy court erred in determining that the FAC failed to plausibly allege that Heller did not receive all that it was entitled to from the 2021 SpaceX distribution. In the FAC, the Plan Administrator alleged that, in 2006, Heller received two distributions from the 2002 subfund based on both common and preferred stock and that the distribution percentage differed from the one used in 2021. Therefore, based on these allegations, it was plausible that the 2002 Subfund Appendix incorrectly stated the proper distribution amounts and that Heller had more than a zero interest in common stock. The court disagreed, finding that the facts about the 2006 distributions showed nothing more than a "mere possibility" that there was some explanation to contradict the explicit language in the 2002 Subfund Appendix, and that "possibility" without something more did not equate to "plausibility." We agree.

As the Ninth Circuit Court of Appeals held in *Starr v. Baca*, 652 F.3d

21

1202, 1216 (9th Cir. 2011), if both the plaintiff and defendant offer a "plausible" alternative explanation, the complaint survives a motion to dismiss under Civil Rule 12(b)(6). A complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. *Id*. *See also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108 (holding that, for a "possible" alternative explanation to become a "plausible" one, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true[.]" (citations omitted)). While the Plan Administrator alleged facts about the 2006 distributions as an alternative explanation to the 2002 Subfund Appendix's explicit language that Heller had no interest in the common stock, the fact the 2006 distributions were inconsistent with the 2021 distribution did not "plausibly" show that the 2021 distribution was incorrect and not consistent with the 2002 Subfund Appendix. In other words, just because the 2006 distributions were done differently than the 2021 distribution did not plausibly exclude the possibility that the 2021 distribution was done correctly.

Accordingly, we find no error in the bankruptcy court's decision to dismiss all claims in the FAC based on the 2021 SpaceX distribution.[4]

---

[4] The Plan Administrator argues that the bankruptcy court erred by not allowing him to proceed with his claims for declaratory relief and unjust enrichment when VLGI and the Fund Managers did not challenge those claims until their reply brief. He further argues that the court failed to state on what grounds those claims were dismissed, and, to the extent the court dismissed them sua sponte without notice, it erred.

VLGI and the Fund Managers challenged the declaratory relief and unjust

**C. The bankruptcy court did not err in dismissing certain claims in the original complaint without leave to amend.**

**1. Claims against VLGI 2006, VLGI 2007, and VLGI 2008**

The Plan Administrator argues that the bankruptcy court should not have dismissed his claims against VLGI 2006, VLGI 2007, and VLGI 2008. In the original complaint, he alleged claims for turnover (which we discuss below), conversion, and unjust enrichment. He argues that the court erroneously dismissed the conversion and unjust enrichment claims on the basis that they amounted to a "discovery dispute" that had to be determined in a motion to compel in the main case prior to filing an adversary complaint. Nothing in the memorandum decision could be interpreted as a "holding" by the bankruptcy court that parties are required to move to compel production of documents during a Rule 2004 examination prior to filing a complaint. Rather, the court was admonishing the Plan Administrator for including multiple pages of allegations about purported discovery problems (for which he never sought relief) that did not relate to a particular claim for relief but served only to overcrowd and confuse the complaint.

In reality, the court dismissed these claims because the Plan Administrator failed to support them with adequate allegations. This was not

---

enrichment claims in their Motion to Dismiss the FAC, arguing that the FAC should be dismissed "in its entirety with prejudice." Consequently, the court did not dismiss these claims "sua sponte." In any event, the unjust enrichment claim fails since no defendant was unjustly enriched by receiving a distribution purportedly belonging to Heller. As for declaratory relief, no determination as to the estate's rights in the common stock of the 2002 subfund is warranted.

23

error. The complaint failed to allege that there was a distribution from VLGI 2006, VLGI 2007, or VLGI 2008 that was not made to Heller due to its removal as manager (or otherwise), or any facts implicating them in a conversion scheme, or any facts that they received any of the SpaceX distribution that allegedly was supposed to go to Heller. In fact, the Plan Administrator admitted that it was "unclear" as to what Heller's ownership interest was in these funds and whether any amounts were owed.

Lastly, we need not address the Plan Administrator's argument that the bankruptcy court should not have, if it did, taken judicial notice of the unsigned and incomplete operating agreements for VLGI 2006, VLGI 2007, and VLGI 2008, because their authenticity was disputed. Even without these documents, the complaint failed to plausibly allege that Heller did not receive distributions it should have from these funds, if there ever were any.

### 2. Turnover claim

The Plan Administrator argues that that turnover claim against Defendants should not have been dismissed without leave to amend. The bankruptcy court determined that this claim failed because it did not concern undisputed property of the bankruptcy estate. The Plan Administrator argues that § 542 does not require that ownership of the asset be undisputed and that more recent decisions have ruled as such, contrary to our holding in *MCI Telecommunications Corp. v. Gurga (In re Gurga),* 176 B.R. 196, 199 (9th Cir. BAP 1994) (stating that "turnover proceedings involve return of *undisputed* funds").

The cases cited by the Plan Administrator are not binding on this Panel.

24

However, because we have decided that he failed to plausibly allege that Heller was entitled to more than it received from the 2021 SpaceX distribution, we need not decide this issue. There is nothing that Defendants need to turn over.

### 3. Claims against the Fund Managers for pre-2010 conduct

The Plan Administrator argues that the bankruptcy court erred in dismissing the claims against the Fund Managers to the extent of their pre-2010 conduct because the 2010 Releases absolved them of any such claims. He maintains that the 2010 Releases did not encompass claims against the Fund Managers in their capacity as managers of and fiduciaries to the Funds. Such claims, he argues, were outside the scope of what was released in the settlement agreements.

We need not address this argument. Even if the bankruptcy court misconstrued the 2010 Releases, the claims against the Fund Managers failed because the complaint did not plausibly allege that Heller was entitled to more than it received from the 2021 SpaceX distribution. Without a plausible claim for a distribution from the common stock, the Plan Administrator had no claim against the Fund Managers for their conduct that caused no damages. Assuming for the sake of argument that the bankruptcy court's interpretation of the 2010 Releases was wrong, that error would be harmless.

## D. The bankruptcy court did not abuse its discretion in denying leave to amend.

If a court dismisses a complaint for failure to state a claim, it may grant

leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *see* Civil Rule 15(a)(2) (leave to amend should be freely given). Generally, when a party can plead a viable claim, the court should grant leave to amend. *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir. 2011). At the same time, if the court determines that amendment would be futile, it must dismiss the complaint with prejudice. *Tracht Gut, LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC),* 503 B.R. 804, 815 (9th Cir. BAP 2014) (citation omitted), *aff'd,* 836 F.3d 1146 (9th Cir. 2016); *see Zadrozny,* 720 F.3d at 1173 (stating that amendment is futile when plaintiff's claims "are factually and legally implausible").

In granting the Motion to Dismiss the FAC without leave to amend and dismissing the FAC with prejudice, the bankruptcy court ruled that any amendment would be futile because the Plan Administrator had still not pleaded a plausible claim for relief despite his extensive informal discovery efforts and the extensive litigation of the original complaint. To the extent the Plan Administrator argues that the court should have granted leave to amend, whether it is the claims that were dismissed in the original complaint without leave to amend, or the claims dismissed with prejudice in the FAC, we agree with the bankruptcy court's finding that granting leave in this case would have been futile. Accordingly, it did not abuse its discretion in denying leave to amend.

## CONCLUSION

For the reasons set forth above, we AFFIRM.